[No. 4182.    Decided July 10, 1902.]

CHAUNCEY W. GRIGGS et al., Respondents, v. GEORGE
LEWIS GOWER, Appellant.

CONTRACTS — CONSTRUCTION — REIMBURSEMENT    FOR    MONEYS    AD-
     VANCED — PARTITION — RIGHT TO LIEN — PERSONAL JUDGMENT.
     Action by plaintiffs for the partition of land, an undivided half of which they held in trust for defendant, and to have a lien declared on defendant's share for money advanced and for the sale of his share to satisfy the lien. Owing to legal complications with a third party, defendant had conveyed a tract of land to plaintiffs, who were to pay $14,000 for one-half thereof and hold an undivided half in trust for the grantor, agreeing to survey and plat the land into lots within fifty days, which should be sold as soon as possible at a minimum price of $300 each, and

from the sums realized thereby expenses were to be first paid and the balance divided between grantor and grantees. Subsequently, in compromise of the suit by said third party, the plaintiffs, at defendant's request, advanced the sum of $25,000, which left plaintiff at the time indebted to them in the sum of $17,000, whereupon the original agreement was so modified as to permit plaintiffs to retain the share of the proceeds of sales belonging to defendant until they should have been fully reimbursed for the advances made by them, and were to look for reimbursement to such fund alone. Shortly after this agreement was entered into the real estate market became inactive and it was impossible to sell the lots at the price agreed upon, but defendant refused to lower such selling price. There was no time expressed when the agreement should terminate and a settlement be made, but there was a provision that $2,500 per year should be paid to defendant for two years, or a proportionate part thereof should the suit against him be determined before the expiration of two years, upon which event defendant was entitled to demand a reconveyance of an undivided half of the property remaining unsold.

*Held*, that it was within the contemplation of the parties that the lots would be sold within a reasonable time and plaintiffs thereby receive reimbursement for moneys advanced; that there having been no sales of the lots for a long time, plaintiffs were entitled to partition thereof, and also to a lien against defendant's share of the land after partition for the purpose of reimbursement of advances made.

*Held, further*, that by the terms of the agreement the plaintiffs were to look to the proceeds of the land alone for reimbursement, and hence would not be entitled to a personal judgment against defendant.

Appeal from Superior Court, Pierce County.—Hon. Thad Huston, Judge. Modified.

*C. M. Riddell* and *John A. Shackleford*, for appellant.

*George Ladd Munn* and *Herbert S. Griggs* (*Walker & Munn*, of counsel), for respondents.

The opinion of the court was delivered by

Mount, J.—On October 30, 1888, appellant, by written contract, agreed to convey to respondents an undivided

one-half interest in the southeast quarter of the northeast quarter of section 7, township 20 north, range 3 east, in consideration of the payment of $14,000, $1,000 of which was then paid. Thereafter, on January 20, 1889, appellant conveyed by deed the whole of the above-described premises to respondents, and on the same day entered into a written contract with respondents, which recited, among other things, as follows:

"Whereas, a certain suit is now pending in the second judicial district of said Territory of Washington, wherein one Lillian Norton Gower is plaintiff and the said George Lewis Gower defendant;

"Now, therefore, for the purpose of utilizing said property during the pendency of said suit it is hereby understood and agreed by and between the parties hereto as follows:

"First. That one undivided half of said property is held by the parties of the first part [respondents here] in trust of and for the benefit of said party of the second part [appellant here]. . . .

"Third. That said parties of the first part will, as soon hereafter as may be conveniently done, and within fifty days from the date hereof, cause said property to be surveyed and subdivided into lots of the size of 25x100 feet each, or as nearly conforming to that size as possible, and cause a proper plat thereof to be made and filed with the proper authorities in such manner as to constitute said property an addition to the city of Tacoma; and that they will also within said fifty days offer for sale and sell, if possible, the said lots, executing their warranty deeds therefor, at a fair market price therefor, but not for a less sum than $300 for each of said lots.

"Fourth. That from the proceeds of such sales shall be first paid the expense of such survey and plat, and all other reasonable and necessary expenses of such sales, and thereafter shall be paid to said party of the second part or to his order, the sum of $2,500 each year, for the space of two years ensuing the date hereof, or proportionately

until the final determination of said above mentioned suit, if such shall be finally determined before the expiration of said space of two years.

"Fifth. That upon the final determination of said above mentioned suit, said parties of the first part will, upon demand, re-convey to said party of the second part an undivided one-half of all said property then remaining unsold, and will render account to him of the moneys received from the sale of such portions thereof as have been sold, and of the amounts then remaining due and unpaid upon any contract for the sale thereof; and will pay over to him in cash, after deducting the expenses of platting and sales, as aforesaid, one-half of the moneys so received, and one-half of the money so due upon such contracts as the same shall be from time to time received; and will also pay to him in cash the additional sum of $13,000 as specified in the above described contract of sale, and in the second paragraph hereof, after first deducting therefrom the amount previously paid him under the provisions of the next preceding paragraph hereof."

Under this agreement the lands were immediately platted into lots and blocks as an addition to the city of Tacoma, and the lots were offered for sale. Some sixty-four thereof were sold and statements of expenses rendered and agreed to. During the succeeding two years respondents paid to appellant $5,000 as agreed. Respondents at this time held the legal title to the whole of the property described, and were indebted to appellant under the contract in the sum of $8,000. The lots were worth, at a "fair market value," $300 per lot. The suit of Lillian Norton Gower, a sister-in-law of appellant, was still pending against him, in which suit Mrs. Gower claimed an interest in the property. At this time Mrs. Gower had agreed to settle the suit, and, in order to clear up the title, respondents agreed to advance to her for appellant the sum of $25,000; and thereupon the contract of Sep-

tember 24, 1890, was entered into. By this contract it
was stipulated, in effect, that the respondents should pay
to Mrs. Gower the $25,000, and that the title of the lands
theretofore conveyed by appellant to respondents should
continue to remain in respondents until they had been re-
imbursed the sum of $25,000, less the amount due appel-
lant under the original contract. The contract then re-
cites as follows:

"And it is hereby further covenanted, agreed and under-
stood by and between the parties hereto that for the pur-
pose of such reimbursement that portion and that portion
only of all cash receipts arising from the sale of lots in
said Griggs & Hewitt's Addition to which said party of
the first part would otherwise be entitled under said agree-
ment of January 20, 1889, a copy of which is hereto an-
nexed, shall be applied until such reimbursement is ac-
complished and that the said agreement of January 20,
1889, a copy of which is hereto annexed as aforesaid, be
and be deemed to be changed and modified accordingly.
Provided, that the said party of the first part may at any
time hereafter pay to said parties of the second part such
sum of money as is necessary to accomplish such reim-
bursement as aforesaid, and shall then be entitled to re-
ceive the settlement and conveyances mentioned and de-
scribed in said original agreement, dated January 20,
1889, a copy of which is hereto annexed and made a part
of this agreement. Provided, however, upon the comple-
tion of such reimbursement as aforesaid, all lots in said
Griggs & Hewitt's Addition, remaining unsold, shall be
divided into two equal portions by lot, and the parties
of the second part shall convey to the party of the first
part one of such equal portions instead of an undivided
half of all unsold lots, as provided for in said agreement
of January 20, 1889."

Respondents thereupon paid the $25,000 as agreed.
But few, if any, of the lots were sold after this time, be-
cause the market for real estate became inactive, and the

value of the lots decreased until it became impossible to sell the same at a minimum limit of $300. The respondents sought to modify the contract fixing the minimum limit of the selling price on each lot, but appellant refused to permit sales at a less figure. Since that time respondents have had possession of the property at continual expense for taxes, and have derived no benefit therefrom. This action was brought by respondents below for a partition of the property, and they prayed that a lien be declared in their favor upon the share of appellant for the balance due them for the money advanced for the use and benefit of appellant, and for the sale of appellant's share to satisfy the lien. Issues were joined, a trial had, and a decree as prayed for entered against appellant. At the time of the trial it was stipulated that appellant was indebted to respondents for moneys advanced in the sum of $20,000. It was not disputed that the entire value of the tract was much less than this sum, and that it would probably never be worth that sum.

It is first argued by appellant that under the contract the right of respondents to reimbursement for money advanced to Mrs. Gower is limited to the proceeds of sales of lots at $300 each. To determine the correctness of this contention, it is necessary to examine and construe the contracts in the light of the surroundings of the parties at the time of their several agreements. In the contract of January 20, 1889, it was provided that the property should be platted, and, if possible, sold within fifty days. It was evidently contemplated that the lots would meet a ready market and be sold, and that the suit of Gower v. Gower, which then seemed to stand in the way of a final settlement, would be finally determined at or before the expiration of two years, and thereupon, upon demand of appellant, the property should be divided, and their af-

fairs finally settled. At about the expiration of the two years the suit was finally settled by the payment of $25,-000, which was $17,000 in excess of the amount due appellant. This amount was advanced by the respondents, and the contract of September 24, 1890, was entered into. There was no express limit of time fixed by this agreement when the transaction should terminate and a settlement be made. At that time the lands were considered valuable, and there was no modification of the minimum price at which each lot was to be sold. There was a large margin of profit to both appellant and respondents if sales could be continued at this price, and the parties evidently contemplated that sales would be made and their balance speedily adjusted, and that within a reasonable time each would realize a profit from the transaction. But subsequently there were few or no sales, and the value of the property depreciated until the lands were of very little value. The whole tract, according to the record, was not sufficient at the time of the trial to pay the balance due respondents. The contract was based upon the value of the property at the time it was made. The contingency which arose evidently was not contemplated by the parties, and no provision was made therefor. Each relied upon the contract being fulfilled within a reasonable time. There was a provision that appellant could "at any time" pay the amount due and receive a division of the property remaining unsold, and also a provision that the respondents were entitled for reimbursement to that portion, and that portion only, of the cash receipts arising from the sale of lots. It seems manifest from these contracts that the respondents were satisfied to advance for appellant the money necessary to make the title of the property clear, and hold the lands as security for the money so advanced, and relied solely upon the lands for

reimbursement; that the appellant should not be bound to make any payments or reimburse respondents except from his portion of the proceeds of the sales; and that the provision that that portion only of the cash receipts arising from the sale of lots shall be applied until such reimbursement is accomplished referred to the manner of payment, and not to the time. Under this construction, appellant had a reasonable time in which to pay the balance due, and respondents could not enforce payment as against the lands until after a reasonable time, and reasonable effort to sell the lots at the price agreed upon. These obligations were, under the law, mutual between the parties, whether expressed or not. It is not disputed that a long time has intervened since the contract was made, that a reasonable effort to sell the property by respondents has been unsuccessful, that the interest of appellant cannot be sold for sufficient to pay the indebtedness of appellant to respondents under the contract, and that there is no reasonable probability that the value of the property will ever amount to the sum due thereon. It certainly was not the intention of the parties that the $17,000 advanced for appellant should never be repaid if the lots could not be sold for $300 each. We are of the opinion that the action was proper, and that the respondents had a lien upon the property; which lien was properly enforced.

It is next urged that the court erred in entering a personal judgment against appellant. There was no agreement by which appellant bound himself to reimburse respondents for money advanced. It is true, there was a provision that appellant "may at any time hereafter pay to said parties of the second part such sum of money as is necessary to accomplish such reimbursement as aforesaid, and shall then be entitled to receive the settlement and

·conveyances" named; but this provision was not a promise to pay. It was simply the reservation of an option to pay if he chose. Upon the part of the respondents it was expressly "agreed and understood by and between the parties hereto that for the purpose of such reimbursement that portion, and that portion only, of the cash receipts arising from the sale of lots in said Griggs & Hewitt's Addition, to which said party of the first part would otherwise be entitled under said agreement of January 20, 1889, . . . shall be applied until such reimbursement is accomplished." It is thus seen that the respondents expressly agreed to pay themselves from the lands, and from that source only. They also took possession of the lands, and held the absolute title in trust as security for their reimbursement. Under this agreement it is clear to our minds that respondents relied wholly upon the lands for reimbursement, and are therefore not entitled to personal judgment against appellant. There is no merit in the other assignments of error.

The judgment of the lower court will be modified to the extent of striking out the provision for a deficiency judgment against appellant. In all other respects the judgment is affirmed, with costs against respondents.

REAVIS, C. J., and ANDERS, FULLERTON, HADLEY, WHITE and DUNBAR, JJ., concur.