[No. 23304. Department Two. January 7, 1932.]

WASHINGTON PULP & PAPER CORPORATION, *Respondent,* v. ALBERTA S. ROBINSON *et al., Appellants.*[1]

*Allen, Froude, Hilen & Askren* and *Thomas A. Stiger,* for appellants.

*Charles T. Donworth* and *Clarence R. Innis,* for respondent.

[1]Reported in 6 P. (2d) 632.

MAIN, J.—This action was brought to quiet title to real property. The defendants in their answer pleaded an affirmative defense, which was, in effect, a cross-complaint, in which they asked that title be quieted in them to a certain interest in the property. To the cross-complaint, a demurrer was interposed and sustained. The defendants refused to plead further, and elected to stand upon their pleading. From the judgment entered dismissing the cross-complaint and quieting the title in the plaintiff to the land in controversy, the defendants appealed, and the judgment of the trial court was reversed and the cause remanded, with directions to the superior court to overrule the demurrer to the cross-complaint. *Washington Pulp & Paper Co. v. Robinson,* 153 Wash. 683, 280 Pac. 68.

After the case went back to the superior court, the plaintiff replied to the answer and cross-complaint. The cause came on for trial before the court without a jury, and at the opening of the trial the defendants moved for a judgment on the pleadings and for dismissal, on the ground that there was a fatal variance between the complaint and the reply. This motion was overruled, and was repeated at the conclusion of the trial and again denied.

The court made findings of fact, from which it was concluded that the plaintiff was the owner of a 27/32 interest in the property and the defendants 5/32, and that the property should be sold and the net proceeds divided in accordance with the respective interests of the parties. From the judgment entered in accordance with the findings and conclusions, the defendants appeal.

The facts essential to be stated are these: July 14, 1906, Fred W. Benjamin and Issachar N. Robinson entered into a written contract, by which Robinson was to select, cruise and purchase desirable timber

lands in this state. Benjamin was to furnish the money with which to make the purchase, and title was to be taken in his name. In pursuance of this contract, Robinson selected, cruised and purchased certain lands in Jefferson county, for which Benjamin paid, and the title was taken in his name. The contract, so far as here material, provided:

"The lands so purchased shall be held by the party of the first part in his name [Benjamin], until the parties of the first and second part shall agree upon the sale thereof.

"In the meanwhile, the party of the first part shall pay all taxes and assessments that may be assessed against and levied upon said property, and shall also pay for one or more watchmen or cruisers, if the same are deemed necessary by the party of the second part, for the protection and guarding of the property from fires, timber thieves, and such.

"Upon the sale of such lands, the proceeds thereof shall be divided as follows:

"First: To repay the party of the first part interest upon the purchase price advanced by him, from the date of advancement until paid, at the rate of six per cent per annum; and amounts advanced for taxes or for watchmen, as above contemplated, with interest thereon from date of advancement until paid, at the rate of six per cent per annum; the amount of the purchase money advanced by him.

"Second: Balance to be divided equally between the party of the first part [Benjamin] and the party of the second part [Robinson]."

July 6, 1916, Robinson died intestate. The appellants claim by, through and under Robinson. The other Robinson interests had been acquired by the respondent. December 1, 1927, Benjamin sold, and attempted to convey, a complete title to all of the property which had been purchased pursuant to the contract between him and Robinson to the respondent, for the sum of $101,000 in cash. The appellants refused to accept

their proportionate share of the net proceeds of the sale price, and, when the action was brought to quiet title, pleaded in their answer and cross-complaint an interest in the property by virtue of the contract.

The respondent's position upon the former appeal was that the appellants had no interest in the land, but only an interest in the net proceeds after the sale. But it was held that the appellants, by virtue of the contract, had an interest in the land.

■ The first question is whether the trial court's ruling upon the motion of the appellants for judgment on the pleadings and for dismissal because of a claimed fatal departure between the complaint and the reply, was correct. Rem. Comp. Stat., § 277, provides that, when the answer contains new matter constituting a defense or a counterclaim, the plaintiff may reply to such new matter, denying generally or specifically each allegation controverted by him, and he may allege in ordinary and concise language "any new matter not inconsistent with the complaint, constituting a defense to such new matter in the answer."

In *Crowley v. Byrne,* 71 Wash. 444, 129 Pac. 113, it was held that rights of action to quiet title and a partition of real estate may be united in one action. It was there said:

"Some contention is made by counsel for respondent that an action for partition cannot be maintained where the title of the plaintiff is questioned; in other words, that appellant cannot quiet his title and have partition in the same action. This question has been decided adversely to counsel's contention in *Hill v. Young,* 7 Wash. 33, 34 Pac. 144, and *Kromer v. Friday,* 10 Wash. 621, 39 Pac. 229, 32 L. R. A. 671. Indeed our statute relating to partition seems to expressly so provide in Rem. & Bal. Code, § 844, as follows:

" 'The rights of the several parties, plaintiffs as well as defendants, may be put in issue, tried and determined in such suit.' "

In *Church v. Brown,* 150 Wash. 178, 272 Pac. 511, it was held that, where the defendant, in an action to quiet title under a deed given to the plaintiff, answers that the deed is a mortgage, it is not a departure for the plaintiff to reply, denying the answer, and praying in the alternative for a foreclosure of the mortgage; since equitable jurisdiction, having been invoked for one purpose, will be retained for a complete determination of the cause. It was there said:

"Appellants in their answer pleaded an equitable defense, namely, that the deed which they had theretofore delivered to respondent was in fact a mortgage and not an absolute conveyance, and, in addition to asking that the action be dismissed, they prayed for 'all relief to which they are entitled at law and in equity.' It is possible that, under the strict rules of pleading which formerly prevailed, respondent's reply, being in its nature an alternative pleading, might have been held to be objectionable, but under the more modern and liberal rules of pleading, under which rules it is held desirable that all controversies between the parties arising out of or depending upon the transaction which is the subject-matter of the action, be determined and settled in one instead of several proceedings, we hold that the procedure followed by respondent in replying to appellants' answer was unobjectionable."

It is difficult to see any substantial distinction between that case and the one now before us. The case of *Clemmons v. McGeer,* 63 Wash. 446, 115 Pac. 1081, and other of the earlier cases, if they are out of harmony with the later and more liberal view, as indicated in the case last cited, are no longer of controlling effect. Since an action to quiet title and for partition are not inconsistent, it necessarily follows that, where the action is brought to quiet title and the reply, as in this case, asked for a sale of the property in accordance with the terms of the contract, the reply

and the complaint are not inconsistent. The trial court correctly overruled the motion for judgment on the pleadings and for a dismissal.

Upon the merits, the principal question is whether the trial court erred in ordering a sale of the property and that the net proceeds be divided, rather than directing that it be partitioned and the interests of the respective parties be set off to them. The contract between Benjamin and Robinson, as appears from the excerpt therefrom above quoted, provided that the lands purchased should be held by Benjamin in his name until he and Robinson "shall agree upon the sale thereof." It also provided that, when the sale was made, Benjamin should be repaid all the advancements he had made, together with interest thereon, and the balance was to be divided equally between the parties. It thus appears that the property purchased was to be held until the parties should agree upon a sale, and then the net proceeds should be divided.

Robinson, as above stated, died July 6, 1916, and the court was not in error in directing in the year 1930, when the judgment was entered, that the property be sold and the net proceeds divided in accordance with the terms of the contract. In *Miller v. Nudd,* 149 Wash. 419, 271 Pac. 80, it was held that, where a joint venture contemplated advances to pay off a mortgage, a sale of the property, repayment of the advances and division of the overplus, if any, and the parties were unable to consummate the venture, a court of equity will afford relief by a sale to repay the advances. It was there said:

"The joint enterprise pleaded contemplated the sale of the property, the repayment of the advances and the division of the overplus, if any. The parties being unable to effect a sale or to repay the advances, a court of equity will afford relief by directing a sale under proper safeguards."

The case of *Nudd v. Rowe,* 120 Wash. 446, 207 Pac. 660, is to the same effect.

This case differs from *Griggs v. Gower,* 29 Wash. 86, 69 Pac. 745, in that here the contract expressly contemplated and provided for a sale, while in that case the contract provided that the property remaining unsold "shall be divided in two equal portions by lot." In the decree in this case, it was directed that the property be sold on November 14, 1931, which was approximately a year after the date of the trial, and the appellants were given the right within that time to produce a purchaser who would pay for the property more than $101,000, the price at which it had been sold to the respondent.

The argument of the appellants, to the effect that the property should have been divided and not ordered sold, is unavailing, because the sale was ordered in accordance with the provisions of the contract and was not as the result of a statutory proceeding for partition, where the rule is that it must be shown that great prejudice must result from a division before the court has power to order a sale. The statutory requirements with reference to partition and the cases thereunder, such as *Williamson Investment Co. v. Williamson,* 96 Wash. 529, 165 Pac. 385, are not applicable in a case like this, where the parties by written contract entered upon a joint adventure, and in the contract provided for the sale of the property purchased thereunder and the division of the net proceeds. One of the parties to the contract being dead, a court of equity had a right to order a sale and division of the net proceeds in accordance with the terms of the contract.

The fact that the respondent may, in its prayer in the reply, ask for relief to which it was not entitled, would not operate to defeat its right to the relief to which it was entitled.

Finally, it is said that the court erred in providing that the expenses of the sale should be paid out of the proceeds thereof. But we find no error in this regard. Clearly, this was a necessary expense, and the sale being made in pursuance of the contract, each of the parties should bear his proportionate share.

The judgment will be affirmed.

TOLMAN, C. J., MILLARD, HOLCOMB, and BEALS, JJ., concur.