[No. 11599.  Department Two.  March 9, 1914.]

JOHN W. WHITHAM, *Plaintiff and Appellant*, v. HOWARD J. HILTON, *Defendant and Appellant*.[1]

ATTORNEY AND CLIENT—EMPLOYMENT—EVIDENCE—SUFFICIENCY. In an action for services rendered in securing a settlement of pending proceedings to condemn defendant's land, by a sale of the land to the school district seeking condemnation, the evidence establishes that plaintiff was employed as an attorney, and not as a real estate broker, where it appears that the defendant, a nonresident, sent his attorney in fact to this state to effect a settlement of the case by a sale, with power to make a deed, and that he employed real estate agents to assist him, but was unsuccessful, and could obtain an offer of but $4,500 for three acres, whereupon he called upon the plaintiff, who was an attorney and not in the real estate business, and placed in plaintiff's hands the papers in the condemnation suit, evidently with the purpose of preparing a defense or securing a favorable award, the plaintiff was referred to by the attorney in fact as his attorney, and through plaintiff's efforts, a sale to the school district of two acres was effected for $7,250 and the condemnation proceeding dismissed.

PRINCIPAL AND AGENT — APPARENT AUTHORITY — EMPLOYMENT OF ATTORNEY. An attorney in fact, sent to this state to settle pending proceedings to condemn the land of a nonresident defendant, had apparent authority to employ an attorney to defend the case and assist in the settlement, where it appears that defendant attempted to agree upon a purchase price before the condemnation proceedings, without

[1]Reported in 139 Pac. 209.

success, and after suit, executed the power of attorney authorizing
the agent to make a deed, placed the papers in the condemnation
proceedings in his hands, and sent him to this state evidently for
the purpose of selling the land or procuring a favorable award.

ATTORNEY AND CLIENT—ACTION FOR SERVICES—REASONABLE FEE.
Where an attorney procured a sale of two acres of land for $7,250
in settlement of condemnation proceedings, after his client, with the
assistance of real estate agents, were able to obtain an offer of but
$4,500, for three acres, the sum of $350 is a reasonable attorney's fee.

Cross-appeals from a judgment of the superior court for
King county, Humphries, J., entered May 24, 1913, in an
action for services rendered, after a trial to the court. Re-
versed on plaintiff's appeal.

*Milan Velikanje,* for plaintiff.
*James Kiefer,* for defendant.

PARKER, J.—The plaintiff seeks recovery of compensation
for services rendered by him for the defendant, alleging the
same to be of the reasonable value of $350. A trial before
the court without a jury resulted in findings and judgment
in favor of the plaintiff for $181.25. From this disposition
of the cause, the defendant appealed, and thereafter the plain-
tiff also appealed.

While the evidence is not free from conflict, we think the
controlling facts established thereby may be summarized as
follows: The plaintiff is a duly admitted and practicing at-
torney and counsellor at law, residing at Seattle, in this state.
The defendant is a resident of Denver, in the state of Colo-
rado. In March, 1912, School District No. 51 of King
county, which lies near the northerly limits of the city of
Seattle, commenced, in the superior court for King county,
an eminent domain proceeding against the defendant, seek-
ing to acquire a three-acre tract of land owned by him, for
school purposes. He was served with process therein, either
by publication and mailing or by delivery of the summons
and petition to him personally at Denver, his place of resi-

dence.   In any event, there came into his possession, soon
after the commencement of the proceeding, a copy of the
summons and petition therein.   The commencement of that
proceeding seems to have been preceded by an unsuccessful
effort of the school board to agree with the defendant upon
a price at which he would sell the land to the school district.

Thereafter, in July, 1912, the defendant executed and de-
livered to one Hollowell, a resident of Denver, a power of at-
torney giving him power to convey the land as attorney in
fact for the defendant, and also placed in the hands of
Hollowell the summons and petition in the eminent domain
proceeding, together with an answer thereto prepared by a
Denver attorney, all of which was manifestly for the purpose
of having Hollowell proceed to Seattle and dispose of the
land to the school district at such price as would be advan-
tageous to the defendant, or to see that the eminent domain
proceeding was properly defended in the superior court and
a fair award secured therein.

Soon thereafter, Hollowell proceeded to Seattle, where he
secured the services of a real estate firm to assist him in in-
ducing the school board to purchase the land.   After some
negotiations, they succeeded in procuring an offer from the
school board of $4,500 for the land, it declining to pay any
greater sum therefor.   Hollowell deeming this sum insuffi-
cient, went to the plaintiff, and employed him, knowing that
he was an attorney and not a real estate agent.   Hollowell
then showed to the plaintiff his power of attorney and placed
in the plaintiff's hands the summons and petition in the emi-
nent domain proceeding, together with the answer thereto
which had been previously prepared by a Denver attorney.
He requested plaintiff to examine the papers, manifestly
for the purpose of having the answer filed in court if found
by the plaintiff to be a proper one, and also manifestly for
the purpose of having the plaintiff appear as attorney for
the defendant in the eminent domain proceeding.   The plain-
tiff then, at the instance of Hollowell, entered upon further

negotiations with the school board, looking to a settlement of the matter out of court. After negotiations, pending for some two weeks, they ended with the school board's agreeing to pay $7,250 for approximately two acres of the land, and the voluntary dismissal of the eminent domain proceeding. It seems plain from the evidence that the plaintiff's persuasion, and the fact that he was an attorney and was expected to defend the eminent domain proceeding in the superior court, if brought to trial, caused this advantageous result to the defendant to be brought about. Hollowell executed a deed to the school district for the two acres as attorney in fact for the defendant, received the $7,250 therefor, and left Seattle without offering to pay the plaintiff anything for his services.

The trial court's findings are in harmony with this summary of the facts. There are, however, some other facts worthy of notice. Hollowell testified in his deposition that he had no authority to employ plaintiff as attorney in the eminent domain proceedings; that he employed him as a real estate agent only, and agreed to "divide with him the commission which would come to me [Hollowell] for the making of the sale;" though there is no evidence as to what contract Hollowell had with the defendant as to commission. The defendant testified in his deposition that he had not authorized Hollowell to employ an attorney in the eminent domain proceedings. Two disinterested witnesses testified that, during the negotiations looking to a settlement of the matter out of court, Hollowell had referred to the plaintiff as his attorney in the proceeding. The trial court awarded judgment for $181.25 in favor of the plaintiff, apparently upon the theory that he was employed as a real estate agent only, and was entitled to one-half of the usual commission of five per cent on the purchase price of $7,250.

The contention of counsel for the defendant is that the plaintiff was employed, if at all, as a real estate agent only,

and that he cannot recover compensation, because whatever contract of employment there was, it was not evidenced in writing and was therefore of no binding force under our statute of frauds. Assuming this to be the correct view of the nature of the contract between the plaintiff and Hollowell, as agent for the defendant, and that the trial court so viewed it, as counsel for the defendant insists, it would seem plain that the plaintiff could not recover for want of written evidence of the contract, since such contract was not evidenced in writing. *Broderius v. Anderson,* 54 Wash. 591, 103 Pac. 837.

However, a careful reading of all of the evidence convinces us that the plaintiff was not employed as a real estate agent, but as an attorney in the eminent domain proceedings, and incidental thereto, to bring about a settlement of the cause without a trial, if such could be done to the advantage of the defendant. The fact that Hollowell's effort to effect a sale through a real estate firm failed; that the plaintiff was a practicing attorney and not a real estate agent; that this fact was known to Hollowell, the defendant's agent; that the summons and petition in the eminent domain proceeding were placed by Hollowell in the plaintiff's hands for examination, and as we may fairly assume, for advice thereon and preparation for trial if necessary; and that Hollowell had, in conversation with two disinterested witnesses, referred to the plaintiff as his attorney; it seems to us lends such support to the plaintiff's testimony and his version of his employment contract as to force the conclusion that he was employed as an attorney and because he was an attorney. Manifestly, his services were not inconsistent with such employment. Observation made by the learned authors of Clark & Skyles, Law of Agency, pp. 1369, 1370, lend support to the conclusion we here reach. We are also of the opinion that no specific agreement as to the amount of compensation the plaintiff was to receive for his services was made, notwithstanding Hollowell's testimony. Other testimony and circumstances,

we think, preponderate in favor of the plaintiff on this question.

It is further contended by counsel for the defendant that Hollowell had no authority to employ an attorney. The only testimony tending to affirmatively support this contention is that of Hollowell and the defendant, which, however, amounts to nothing more than their conclusions upon that question. It seems to us that the following are convincing facts pointing to Hollowell's authority to employ the defendant as attorney; the attempt to agree upon the purchase price of the land between the school board and the defendant before the commencement of the eminent domain proceeding; the commencement of the eminent domain proceeding thereafter; the execution of the power of attorney by the defendant to Hollowell; the placing of the summons and petition in the hands of Hollowell by the defendant; and the sending of Hollowell from Denver to Seattle for the apparent express purpose of settlement of the controversy out of court if possible, or to secure as favorable an award as possible in the proceedings. These facts, it seems to us, lead to the conclusion that Hollowell did have authority from the defendant to employ an attorney in the condemnation proceedings, not only for the actual trial thereof, but also to assist in bringing about a settlement of the matter without a trial. In any event, these facts were sufficient to show such an apparent authority in that regard that the plaintiff was entitled to rely thereon. "The apparent authority, so far as third persons are concerned, is the real authority" of an agent. 31 Cyc. 1333.

Since we conclude that the plaintiff was employed by the defendant and by Hollowell as his agent, and that there was no specific agreement as to the plaintiff's compensation for services to be rendered, it becomes necessary to determine the reasonable value of those services. The evidence shows, we think, beyond room for controversy, that the services rendered by the plaintiff were of the reasonable value of $350 or more,

for which judgment was prayed in his complaint. Some contention is made that he is entitled to judgment for even a greater sum. We think, however, in view of the demand made in his complaint, that we would not be warranted in awarding him a judgment for a greater sum. It is true, some effort was made during the trial of this case to have the complaint amended by making the plaintiff's demand for a larger sum. The trial court denied the request to amend, and it does not seem to be seriously urged that the court erred therein. We feel constrained to be guided by the prayer of the plaintiff's original complaint as to the amount of his demand.

We conclude that the plaintiff is entitled to a judgment against the defendant for the sum of $350 as the reasonable value of the services rendered. The judgment of the trial court is set aside, and the cause remanded to that court with directions to enter a new judgment in favor of the plaintiff and against the defendant for $350. The plaintiff will recover his costs upon this appeal.

CROW, C. J., MOUNT, and FULLERTON, JJ., concur.

MORRIS, J. (concurring)—To my mind, this case is a very simple one. Accepting defendant's theory that plaintiff was not employed in the condemnation proceedings, but only acted in the settlement of the controversy between Hollowell and the school district as to the price to be paid for the land, an attorney can render services to a client in obtaining an amicable adjustment of values of land to be taken in a condemnation proceeding just as much as he can in some legal proceeding, if the client desires his services for that purpose; and no provision of the statute of frauds prevents a recovery for such services. It is immaterial whether Hollowell was authorized to employ an attorney or not. He did employ one and the defendant accepted the benefit of the attorney's services and thus ratified Hollowell's act. A subsequent ratification is equal to an original employment. So, upon any theory,

judgment must go for plaintiff for the value of his services. For these reasons, I concur in the direction of judgment in favor of plaintiff.