[No. 12760.   Department One.   February 29, 1916.]

LINDEMAN LUMBER COMPANY, *Respondent*, v. REMOLITE
PAINT COMPANY, *Appellant*.[1]

PRINCIPAL AND AGENT—CONTRACTS OF AGENT—EMPLOYMENT OF FACTOR—RATIFICATION—EVIDENCE—SUFFICIENCY. There was not only a contract by the sales agent of the defendant, a paint company, making plaintiff its agent for the sale of paint on commission, but a ratification of the sales agent's agreement by acceptance of the proceeds thereunder, where the preponderance of the evidence was to the effect that the sales agent took up the matter in response to direct communications between the plaintiff and defendant, entered into the contract, assisted plaintiff in making certain sales agreed to be applied under the contract, and figured plaintiff's commissions on such sales, orders for which were filled directly by the defendant at the consumer's price, while plaintiff's order was filled at such price less the agreed upon commissions, and it appeared that defendant collected the full price for such sales, and in a letter in regard to the same stated to plaintiff that any credits "due for commissions are not payable to you until we have been paid by the people to whom we made direct shipment."

Appeal from a judgment of the superior court for Yakima county, Grady, J., entered November 14, 1914, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

*Roberts & Udell*, for appellant.

*Lynch & Chesterley* (*Davis & Morthland*, of counsel), for respondent.

FULLERTON, J.—This action was brought by the respondent against the appellant to recover commissions claimed to be due on the sale of certain paint. In its complaint the respondent alleged an agreement between itself and the appellant whereby the appellant appointed the respondent its agent to sell its paints in a certain described territory, agreeing to pay it a commission of fifty cents per gallon on

[1]Reported in 155 Pac. 409.

all paints of the appellant sold therein.  The complaint continued with appropriate allegations averring a sale in the described territory of a fixed quantity of paint, the amount due as commissions thereon pursuant to the contract, certain offsets to be deducted, and demanded judgment for the balance.  For answer the appellant denied the contract, and by way of a counterclaim set up a sale of paint to the respondent for which it had not paid, a collection made by the respondent of money due the appellant for which it had not accounted, and demanded judgment for the aggregate of these sums.  The action was tried to the court sitting without a jury.  The court found a contract between the parties substantially as alleged in the complaint, and striking a balance between the accounts of the parties, entered a judgment in respondent's favor for the sum of $202.31.  This appeal is from the judgment so entered.

The principal controversy is over the question whether there was a contract between the parties such as was set forth in the complaint.  The respondent's evidence tended to show the following facts:  The appellant is a corporation having its principal place of business at San Francisco, California.  It deals in a roof paint, known to the trade as Remolite paint, which it sells or contracts to be sold to the consumer at a price of $1.05 or $1.10 per gallon, according to the character of the container in which it is shipped.  In the year 1912, a certain lumber concern had branch yards at various points in the Yakima Valley, in this state, one of which was at Ellensburg under the management of one Gus Lindeman.  This concern had a contract with the appellant under the terms of which it was able to buy the appellant's paint at prices which would net it, when sold at the consumer's price, fifty cents per gallon.  In January, 1913, Lindeman organized the respondent corporation and took over the lumber concern's business at Ellensburg.  With the property transferred was a small quantity of the ap-

pellant's Remolite paint. This the respondent sold, and finding a market in and around Ellensburg for the paint, wrote the appellant to that effect. No direct answer was made to his letter, but some time later the respondent received a telephone communication from the appellant's traveling salesman, one Gene Oden, from the city of Walla Walla, notifying it that the salesman would be in Ellensburg within a short time thereafter, and would take up with it the matter of its inquiry. The salesman called at Ellensburg soon thereafter, and an agreement was entered into between the appellant, represented by the salesman, and the respondent, by the terms of which the respondent was given the exclusive right to sell the appellant's paint in Ellensburg and certain surrounding territory on terms similar to those which the appellant had formerly granted the lumber concern. The respondent then had a number of customers for the paint and these, with other persons in Ellensburg, were visited on the same and the next day by the salesman and the respondent's manager and a quantity of the paint sold to them. The orders for the paint were directed to the appellant at its house in San Francisco, and the paint was subsequently shipped by the appellant directly to the persons giving the orders. The evidence tended further to show that the sales were made subsequent to the agreement, and that it was specifically agreed by the appellant's representative that they should be treated as sales under the agreement, the representative even going so far as to calculate for the respondent its profits on the sales.

The appellant's evidence appears by depositions. Its president and manager testified not only that no such contract was made with the respondent, but that the traveling salesman had no authority to make such contract. The salesman also testified to the same effect; testifying further that he made the sales for which the commission is asked, having no dealings with the respondent other than to sell it a quantity of paint.

The corroborative evidence is all with the respondent. The contract is testified to not only by the respondent's manager, but by its bookkeeper, who was requested by the manager, at the time the contract was under discussion, to search the records of the lumber company and ascertain the nature of the contract the appellant formerly had with that company. The manager also testified that he was personally present when all of the orders for the paint were taken, except in one instance, and that such sale was communicated to him shortly after it was made and the percentage thereon added to the aggregate when the salesman figured out the amount of the respondent's profit on the sales. Several of the persons to whom the sales were made also testified to the manager's presence at the time, and to the effect that he took part in the negotiations leading up to the order. It was shown also that the respondent, at the same time, gave an order through the representative to the appellant for two hundred gallons of paint, on the same forms used by the other persons. This paint was shipped with the paint shipped to supply the other orders, but while the other orders were billed at the customer's price, the order of the respondent was billed to it at substantially fifty cents per gallon less than the customer's price.

It was shown, furthermore, that, after the respondent had disposed of the original shipment, it ordered from the appellant another quantity of two hundred gallons. In answer, the appellant wrote acknowledging its receipt of the order, but declined to fill it, giving as its reason that it had noticed from the "report in detail on your firm" that its principal officers were also the principal officers of another concern; further saying: "We do not like the business methods of one of these gentlemen, so must refuse to grant your firm any more credit." In reply, the respondent wrote calling attention to the fact that it was entitled to credit for commissions in excess of the amount of its original order, and asked a reconsideration. To this letter the appellant replied:

"Lindeman Lumber Company,          August 9th, 1913.
  "Ellensburg,
    "Washington.

  "Gentlemen:—In reply to your recent favor, must say, that even after reconsidering the matter very thoroughly we still feel that it will be impossible for us to fill your order, except under the conditions mentioned in our letter of July 30th, and trust you will see your way clear to pay our invoice of May 20th, less the three per cent discount we have offered you, and on receipt of such remittances we will be pleased to ship the 200 gallons by return. freight.

  "We know that it is not asking too much of a firm of your size to pay this small bill and the mere fact of your complying with our request would convince us that your business methods are different from those followed by the gentleman mentioned in our former letter.

  "We might remind you also that any credits that may be due for commissions are not payable to you until we have been paid by the people to whom we made direct shipment, so we cannot allow any future commissions to enter into our calculations.          Yours very truly,
                              "Rednall Morin Co. Inc."

  The respondent then wrote stating the account between them as it understood it, and demanding a check for the balance due. The appellant, for answer, wrote refusing to recognize the claim for commission, and demanding payment for the paint shipped. The evidence also showed that all of the persons to whom the paint was shipped paid the price charged to the appellant, with the exception of one who paid the account to the respondent, prior to the commencement of the present action.

  It seems to us that no comment on the facts is required. It is not only clear that the appellant's representative entered into the contract contended for by the respondent, but that he made the facts known to the appellant, who filled the orders given by the third persons and the order given by the respondent with full knowledge of the nature of the terms of the agreement. There was thus not only a contract by the agent, but a ratification of the contract by the principal.

It is the settled rule that "one who voluntarily accepts the proceeds of an act done by one assuming, even though without authority, to be his agent, ratifies the act and takes it as his own with all the burdens as well as all the benefits." Mechem, Agency (2d ed.), p. 435, § 148.

It is our conclusion that the judgment should be affirmed. It is so ordered.

MORRIS, C. J., CHADWICK, MOUNT, and ELLIS, JJ., concur.