[No. 15140.   Department Two.   April 7, 1919.]

JAMES H. BUCHANAN, *as Executor etc., Respondent,* v.
MAX SCHUBACH *et al., Appellants.*[1]

MORTGAGES (102)—ASSUMPTION—EVIDENCE. The fact that one purchased mortgaged property "subject to the mortgage," does not necessarily show an assumption of the mortgage, even though he paid $500 thereon for an extension of time.

MORTGAGES (121, 124)—RELEASE—CHANGE IN TIME—EVIDENCE—SUFFICIENCY. A release of mortgagors is not shown by the fact that they sold the property "subject to the mortgage," and that about that time the vendee paid $500 thereon, in consideration of which the time for payment was extended, where such extension was arranged by an agent of the mortgagors who must, therefore, have been cognizant thereof.

PRINCIPAL AND AGENT (30, 32)—APPARENT AUTHORITY. An agent, employed by mortgagors to negotiate a sale of the mortgaged premises that would release them from the mortgage, acts as their agent in obtaining an extension of time of the mortgage, whether it was within the scope of his authority or not, so that they would not be released thereby.

Appeal from a judgment of the superior court for King county, Ronald, J., entered May 4, 1918, upon findings in favor of the plaintiff, in an action to foreclose a mortgage. Affirmed.

*O. O. Felkner* and *Walter S. Fulton,* for appellants.
*W. A. Keene,* for respondent.

HOLCOMB, J.—Max Schubach and wife and Captain J. S. Bollong and wife, the appellants, were the joint owners of certain improved real estate in the city of Seattle, of the value of about $8,000. On December 10, 1909, these parties executed and delivered to one Goldie C. Shinn their note for $4,000, payable three years after date, securing the same by a mortgage

[1]Reported in 180 Pac. 407.

upon the real estate above mentioned. Thereafter respondent's testator purchased the mortgage from the First Mortgage and Savings' Bank, the instrument being assigned by Shinn to Gamidge, the respondent's testator, the assignment being duly entered of record in the office of the auditor of King county.

It appears from the record that, about a year after the maturity of the note and mortgage, the appellants, through one DeBritz, a realty agent, sought to make a sale or trade of the property, as they were unable to satisfy the mortgage and desired to make some arrangement whereby they could be most advantageously released from liability thereunder. This much is conceded; it is in connection with the acts of DeBritz thereafter, as agent for the appellants, that the evidence becomes contradictory. In the first place, we have little doubt that DeBritz and the appellants clearly understood that the prime object of DeBritz' agency was to secure the release of the appellants from their liability under the note and mortgage by securing a purchaser who would assume such liability, nor have we any doubt of the good faith of DeBritz himself in attempting to satisfactorily fulfill the terms of his employment.

DeBritz thereafter succeeded in securing a purchaser of the property, one Miss Corman, the arrangement being a trade, together with a certain amount of cash, according to the appellants, *with* the assumption of the note and mortgage; according to respondent, *without*. The deed from appellants to Miss Corman came through one Miss Aaskheim, who has no other interest in the matter than that of having lent the use of her name to the transferring deed for the purpose of facilitating the transfer. The deed under which Miss Corman holds, it may be said, contains no ex-

plicit assumption of the note and mortgage, the words
"subject to the mortgage" being the only reference
thereto.

It seems that the Corman-DeBritz negotiations were
carried on, to some extent at least, in the presence of
the late William. P. Harper, of the Mortgage Com-
pany, holding the note and mortgage. What was said
and done by these three, germane to the deal, is in con-
flict; the appellants claiming that Harper orally spe-
cifically released them and substituted Miss Corman.
There is one conceded fact, subject to whatever ex-
planation it may be, which is that Miss Corman, about
that time, paid Harper $500 upon the principal of the
note, thereby reducing it to $3,500, and that the note
as it then stood for $3,500 was extended by Harper
for two years, or until December, 1915.

Although denied, we will concede appellants' con-
tention that Miss Corman understood that the object
of the transaction was to release the appellants, either
by assuming the existing mortgage or by making a
new note and mortgage. Certain testimony, although
in part contradicted, as to funds due the appellants
from the city as a condemnation award for a portion
of the property in controversy, and the transfer of
which to Miss Corman she admits was a factor in de-
termining her conduct (the funds to be used to liqui-
date the assumed mortgage it is claimed) would seem
to indicate a general understanding between all par-
ties as to appellants' object.

Unless we can construe the payment of the $500 by
Miss Corman to Harper at the time of her purchase
of the property, as evidence of an intent to assume
the mortgage, we have no testimony, other than oral,
indicative of the release of the appellants. As we
have seen, the deed from Miss Aaskheim to Miss Cor-

man contains no explicit assumption, nor an assumption which could legally be implied from the words "subject to the mortgage"; nor was a new note and mortgage executed by Miss Corman. The proof surrounding the payment of the $500 is not exclusive of other hypotheses than Miss Corman's assumption of the mortgage. It is capable of several conflicting explanations; in fact, such explanation is positively denied by the witness Paul Harper, an officer of the mortgage company. Of course, it will not be suggested that the mere fact that Miss Corman knew of appellants' object necessarily implies her acquiescence therewith.

The proposition may be stated thus: Conceding, as in the main true, the factual contentions of the appellants, including the fact of the $500 payment with the qualifications thereof above noted, is an adequate showing of release made for appellants?

Elementary principles require that this question be answered in the negative. Whatever may have been the intent of the parties, the case presents plainly not a release of original, and a substitution of other, obligors; but simply the extension of an obligation. When Miss Corman paid the $500 upon the principal sum of the mortgage, and the mortgage was thereupon extended for two years, DeBritz being cognizant of the fact, he must, as agent of the appellants, be held to have bound them to the extension. *Whitham v. Hilton*, 78 Wash. 446, 139 Pac. 209, Ann. Cas. 1916 B 260; *Lindeman Lumber Co. v. Remolite Paint Co.*, 90 Wash. 26, 155 Pac. 409; *Corkrell v. Poe*, 100 Wash. 625, 171 Pac. 522. He set out to get a discharge; he thought, when the transaction was finally closed, no doubt, that he had secured a discharge; he had, however, only secured an extension of two years for his

principals upon their note and mortgage. Whether this was within the scope of his authority is immaterial. There was no other meeting of the minds of the negotiators shown, and without satisfactory proof of the release of his principals by the assumption of their obligation, it cannot be granted. Without discussing the relative rights between Miss Corman and the appellants, we must say, as between the appellants and the owner of the note and mortgage, the theory of extension, which is supported by the preponderating evidence, excludes the theory of release, inferential from oral testimony alone.

The judgment of the lower court will be affirmed.

CHADWICK, C. J., PARKER, FULLERTON, and MOUNT, JJ., concur.

### ON REHEARING.

[*En Banc.* November 3, 1919.]

PER CURIAM. — Upon a rehearing *En Banc,* the majority of the court adheres to the opinion heretofore filed herein, and for the reasons there stated, the judgment is affirmed.