[No. 30228.   Department Two.   December 1, 1947.]

BELL WHALEN, *Respondent,* v. JEAN LANIER *et al., Appellants.*[1]

*Wright, Booth & Beresford,* for appellants.

*John M. Warnock,* for respondent.

[1]Reported in 186 P. (2d) 919.

BEALS, J.—This action was commenced during the spring of 1944 by Bell Whalen, a widow, as plaintiff, against Jean Lanier and Myrtle Lanier, his wife, as defendants. The defendant Jean Lanier being, at that time, a member of the United States coast guard, the action was stayed until his release from the service.

In her complaint, the plaintiff alleged that she was the owner of certain real estate in Snohomish county, described as "Lots Twenty-seven (27), and Twenty-eight (28), Block Two (2) of the unrecorded plat of Olympic View Addition to Edmonds"; that on or about a date set forth in the complaint, which date was thereafter changed to read April 25, 1935, the property above described was purported to have been deeded by plaintiff and her husband, E. H. Whalen, to the defendants; that, in fact, plaintiff never signed the deed nor did she acknowledge the same, and that it was made and delivered without her consent; that, thereafter, under date June 20, 1936, the defendants signed a document purporting to be a lease of the above-described premises to the plaintiff and her husband, leasing the property to the Whalens "for the term of the life of said lessees at a rental of $10.00, and other valuable considerations, for the entire period, receipt of which is hereby acknowledged." The document was not acknowledged by defendants.

The lease further provided that the lessees should pay all taxes which would thereafter become due against the premises described; that the lease was not to be assigned and should be terminated by any attempted assignment, and that the lessees should have no power to sublet the premises or any portion thereof without the written consent of the lessors. The lease also provided that:

"No part of the above described land can be sold without the consent of both parties to this lease, and in case such a sale is made by the consent of both parties, the lessee herein shall waive his rights under and release the land sold by joining in the conveyance of the land by signing the deed or by giving a deed to the purchaser."

Plaintiff prayed for a decree quieting her title to the property above described as against defendants.

In due time, the defendants answered the complaint, denying certain allegations thereof and affirmatively alleging that the property was deeded to them by E. H. Whalen and Bell Whalen, his wife; that the plaintiff, Bell Whalen, did sign and acknowledge the deed according to law, and that the deed (which states a consideration of ten dollars "in hand paid") was formally delivered to the defendants by the grantors named in the deed.

Defendants further alleged that the plaintiff and her husband, prior to the date of the deed, were in destitute circumstances, and that the defendants, for more than one year prior to the date of the deed, had extended financial assistance to Mr. and Mrs. Whalen and continued to aid them for a period of years after the date of the deed; that defendants had given to Mr. and Mrs. Whalen a sum in excess of fifteen hundred dollars, and that the deed referred to constituted a gift to the defendants in recognition of the help which they had extended, and also for the purpose of preventing the plaintiff's daughter and son-in-law from securing the property deeded, plaintiff and her husband expressing the desire that the property go to the defendant Myrtle Lanier, a niece of the plaintiff, in recognition of the aid she had extended to the grantors. Defendants further alleged that Mr. and Mrs. Whalen were paid a reasonable, valid, and valuable "consideration for said deed and that said deed was the free and voluntary act" of Mr. and Mrs. Whalen. Defendants prayed that the action be dismissed.

Plaintiff replied, denying the affirmative allegations contained in the answer. By their answer, defendants tendered the issue of valuable consideration, which plaintiff accepted by denials.

The action came on regularly for trial upon the issues outlined above, and resulted in a decree in plaintiff's favor quieting her title to the property mentioned in the complaint as against defendants. Defendants' motion for judgment in their favor notwithstanding the decree or in the alternative for a new trial having been denied, the de-

fendants have appealed to this court from the decree entered.

From the evidence, it appears that E. H. Whalen and Bell Whalen (the respondent in this action) were, for many years, husband and wife; that they had one daughter, Gertrude, who was married to one Evenson; that the defendant Myrtle Lanier is Mrs. Whalen's niece, being the daughter of Mrs. Whalen's sister; that E. H. Whalen, the respondent's husband, died during the year 1941, having for over ten years prior to his death been an invalid and unable to work; that, for some time prior to 1935 and for a period of years thereafter, Mr. and Mrs. Whalen were not on good terms with their daughter and their son-in-law, her husband; that they were friendly with the defendants, who frequently visited them; that, during this period, Mr. and Mrs. Whalen were largely supported by Mrs. Whalen's efforts in keeping boarders.

It appears that Mr. and Mrs. Whalen had asked some relatives for financial assistance, and that the appellants had, to some extent, assisted them with money. Mrs. Lanier testified that the money was not a loan but was a gift, appellants being of the opinion that, as the Whalens had no income, the money would not be repaid.

Respondent testified that she did not sign the deed and that she did not acknowledge it before the notary public, who signed the usual certificate of acknowledgment stating that Mr. and Mrs. Whalen had appeared before him and acknowledged the instrument as their free and voluntary act and deed. The notary who signed the certificate of acknowledgment had died prior to the trial.

It appears, from the evidence, that Mrs. Whalen, while born in Michigan, is uneducated, and that she can write her name only with difficulty. She testified that she never went to school, and learned to sign her name "just by trying." When Mr. Whalen died, he was probably about seventy years of age, and, at the time of the trial, Mrs. Whalen was advanced in years and, while on the witness stand, frequently became confused.

Mr. Whalen's estate was probated, and the property here in question was inventoried as belonging to the estate, appraised at fifteen hundred dollars, and was later set aside to respondent as a homestead.

Respondent's testimony often indicates a lack of understanding of ordinary business terms, and, while she testified that she neither signed nor acknowledged the deed, the evidence supports the trial court's finding that she did sign it. No formal findings of fact were entered, but the court signed a memorandum opinion which is before us as part of the statement of facts. While the court was convinced that respondent signed the deed, this view being clearly supported by the evidence, the court expressed some doubt as to whether she acknowledged it before the notary public.

The statement of facts discloses that, at the close of the evidence, there was argument by counsel which does not appear in the statement. The court's memorandum opinion states that, at the close of the case, the respondent moved that the complaint be deemed amended, in accordance with the evidence, to allege failure or lack of consideration, or a mistake. Appellants resisted the request, but it appears that the court considered the complaint as amended. In so doing, the trial court was correct.

Appellant Jean Lanier was not called as a witness, he being then absent from the state. Appellant Myrtle Lanier was called by respondent as an adverse witness and later testified on her own behalf. As respondent's witness, she testified as follows:

"Q. What was the consideration for the deed? A. There was no consideration other than they said they wanted us to have the place. Q. No consideration other than they wanted you to have the place? A. Other than we had helped them and given them money."

Mrs. Lanier was occasionally confused, as she testified that she saw her husband sign the deed and that she herself signed it also, in which, of course, she was in error, as she later admitted. The witness stated that her husband's name was correctly spelled LeNir, although appellants signed the lease, above-referred to, spelling the name Lanier.

Respondent testified that she knew nothing of the deed until some time in 1941 or 1942, when she had occasion to have the title to the property examined and the fact that the deed was on record was reported to her. She also testified that she knew nothing of the lease until she found it among her husband's effects after his death.

Appellant Myrtle Lanier testified that, in 1941 or soon thereafter, respondent, in a conversation with appellants, raised some objection to the lease and the deed. Mrs. Lanier also testified that Mr. Whalen said that he wanted appellants to have the property, since they had extended help when the Whalens needed it, and that Mr. Whalen suggested making the deed. The record shows the following questions by the court and answers by Mrs. Lanier:

"THE COURT: Who suggested making the deed? THE WITNESS: Mr. Whalen. THE COURT: Was anything at that time said about having a life lease? THE WITNESS: No, sir. THE COURT: Well, did he say what his intention was? You were to have it when? THE WITNESS: When? After his death. THE COURT: After both had died? THE WITNESS: Yes, sir. THE COURT: You knew that this deed was given and that you had immediate possession, didn't you? THE WITNESS: Yes, sir. THE COURT: When was this lease discussed? You said about a year afterwards. THE WITNESS: Yes, sir, in June, 1936. THE COURT: What brought that up? THE WITNESS: I believe the point was brought up of someone had told them we had a right to absolute possession of the place and that we wanted to go ahead and ask them to move. We didn't want to and we suggested the lease so they would have a feeling of security. THE COURT: At the time the deed was made, was it understood between you— between you and your husband and Mr. and Mrs. Whalen that they were to have the right of possession of the property until both had passed away? THE WITNESS: Absolutely. THE COURT: Then this deed was really intended to be a will? THE WITNESS: It might be termed that."

It appears that appellants' last conversation with respondent was either in March, 1941, as testified by Mrs. Lanier, or in March, 1942, as testified by respondent, the latter probably being correct. As stated above, Mrs. Lanier testified positively that there was no consideration for the

deed save that the Whalens were grateful for the money which appellants had given them, the gifts commencing during the year 1934. Mrs. Lanier did not testify as to the total amount of money appellants had then given or subsequently gave to the Whalens. Evidently, by April 25, 1935, the date of the deed, the amount could not have been large. She testified that Mr. Lanier was not earning much money, and that the amount of aid which appellants could afford to extend to the Whalens was limited and never exceeded five dollars at any one time. She also testified that, when Mr. Whalen reached the age of sixty-five years (apparently during or shortly prior to 1939) and received an old-age pension, gifts of money from appellants practically ceased.

It clearly appears from the evidence that, on or about the date of the execution of the deed, Mr. and Mrs. Whalen were somewhat provoked at their son-in-law and his wife, their daughter, and that they, at that time, did not desire their daughter to have their property.

The evidence fails to support appellants' allegation that they had given Mr. and Mrs. Whalen a sum in excess of fifteen hundred dollars, but it may be assumed that they did give them sums of money, not exceeding five dollars at a time, which occasioned some self-denial on their part, and which were of material assistance to their aunt and uncle.

While respondent testified that she knew of no gifts of money from appellants to her husband, the trial court was convinced that appellants did give some money to the Whalens, and that view finds ample support in the evidence. In his memorandum opinion, the trial judge stated, in effect, that he thought respondent was forgetful and confused, and that, in his opinion, she had not intentionally testified falsely, although she did deny that she had written some of her signatures which the court was convinced were, in fact, her autographs.

Respondent testified that, when appellants did visit her and her husband, she would give them vegetables and chickens that she had raised, which appellants do not deny,

and it appears from the evidence that the gifts of money were, to some extent, compensated in kind.

It appears that Mr. Whalen suffered a severe injury while working for a partnership in which his son-in-law had a small share. Although Mr. Whalen's doctor and hospital bills were paid, he received no compensation from the state. Mr. and Mrs. Whalen's dissatisfaction with their son-in-law and daughter evidently arose after Mr. Whalen's injury, and, later, friendly relations between respondent and her daughter were resumed. Whether these friendly relations were re-established before or after Mr. Whalen's death does not appear. At about the same time, respondent became much less friendly with appellants and saw them no more.

Mr. and Mrs. Whalen purchased the property here in question about 1926, occupying it as their home. They paid all of the taxes on the property and kept the house in repair. Mrs. Lanier testified that, when they gave money to their uncle and aunt, they never suggested any purpose to which the money should be devoted.

In some particulars, the testimony is unsatisfactory, but certain facts clearly appear. Mr. and Mrs. Whalen were elderly people. This was their home, and the record does not disclose that they owned other property, or had any source of income after Mr. Whalen was injured and was unable to work, save from the boarders referred to above. Some time after his injury, Mr. and Mrs. Whalen became provoked at their daughter and son-in-law and did not wish them to have any benefit from the property. They wrote a letter to some relatives, including appellants, asking for a loan, and appellants responded to this request by, from time to time, making gifts of small amounts of money to their uncle and aunt.

Mrs. Lanier testified that Mr. Whalen suggested making a deed of the property to appellants. Respondent testified that she did not know from whom the suggestion came. In any event, the deed was made for an express consideration of ten dollars, which Mrs. Lanier positively testified was not paid, and the deed was filed for record at the request of L. C. Engel, the notary who took the acknowledgment.

Whether he filed the deed for record at the request of the Whalens or of appellants, does not appear. Mrs. Lanier testified that, some time thereafter, a suggestion was made by either Mr. or Mrs. Whalen that appellants could take the property away from them, and that, in order to meet this suggestion, appellants executed the unacknowledged lease bearing date June 20, 1936. Apparently, this document was never filed for record, respondent testifying that, after her husband's death, she found it among his effects and, not understanding it, took it to her attorney for explanation. This attorney had died prior to the trial, so his testimony was not available.

There is no suggestion in the evidence that Mr. and Mrs. Whalen intended to make an out-and-out, presently effective gift of the property to appellants. It was their home. Evidently, respondent was earning a living for herself and her husband from the property by keeping boarders and raising a portion of the food on the premises. The trial court, in its memorandum opinion, noted that respondent "is entirely illiterate, except for the ability to make a very scrawling hieroglyph which is to be her signature." There can be no doubt that an affectionate relationship existed between appellants and their uncle and aunt, or that appellants gave the aged couple money from time to time. Summing up the matter, the trial court said:

"Taking into consideration all the evidence in the case, we seem to have one of those cases where there has been a conveyance by an old and to some extent illiterate couple, of *all* their property, without any reservation to them of any rights therein whatever, for very inadequate or no consideration, in fact such a case as is referred to in *Hackett vs. Whitley*, 150 Wash. 529, in which the court quoted from a remark by our late Judge Dunbar in *Kennedy vs. Currie*, 3 Wash. 442, ' "The most inequitable feature of this case is, that Kennedy was without any security for the enforcement of his contract." ' Here, we may well say that the Whalens were not only without any security for the enforcement of a contract, but even without any contract at all."

■ While the trial court expressed some doubt as to whether or not respondent had actually acknowledged the deed, the record is wholly insufficient to support a finding that she did not do so. The statutory presumption which attaches to a properly accomplished notarial or other certificate of acknowledgment can be overcome only by evidence that is clear and convincing. *Chaffee v. Hawkins,* 89 Wash. 130, 154 Pac. 143, 157 Pac. 35.

This action is one in equity and was before the trial court for decision upon the evidence. The decree appealed from is before us for review, also upon the evidence. Appellants assign no error upon the admission or rejection of testimony, their only assignments of error being as follows:

"(1) The trial court erred in setting aside respondent's deed of gift on the grounds of failure of consideration when the only issue before the court was that of the genuineness of the signature on the deed.

"(2) The trial court erred in entering a decree in favor of the respondent in this cause, the effect of which decree was to allow a completed gift *inter vivos* to be revoked at the caprice of one of the two grantors."

As above stated, the issue of forgery of respondent's name on the deed, as alleged in respondent's complaint, was enlarged by appellants' answer and respondent's reply.

Appellants' second assignment of error presents the question of the correctness of the decree appealed from, considered in the light of the evidence in the record.

■ Under the liberal rules prevailing in this state governing the admission of evidence in equitable actions and the amendment of pleadings, we find no error available to appellants under their first assignment. *Washington Pulp & Paper Corp. v. Robinson,* 166 Wash. 210, 6 P. (2d) 632.

Their second assignment of error raises the question of whether or not, upon consideration of the evidence, the decree appealed from should be reversed.

In its memorandum opinion, the trial court recognized the rule that a past consideration may constitute a sufficient basis for a conveyance of real estate, and that such property may be conveyed by gift. The court reviewed the evidence,

observing that Mr. Whalen, for six or more years prior to the date of the deed, had been so completely disabled that he was unable to work; that respondent had largely supported her husband and herself by keeping boarders; that, in 1935, Mr. and Mrs. Whalen were in rather dire financial straits; that appellants would frequently, on weekends, visit their uncle and aunt, usually dining with them; that respondent would give appellants some supplies which she had raised on the property, and that appellants frequently gave small sums of money to the Whalens as friendly gifts, a very close friendship and relationship existing between the parties.

Appellant Myrtle Lanier testified positively that no money whatever was paid to the grantors as consideration for the deed at the time it was executed, the deed having been made in view of the former gifts made by appellants, and because of the fact that Mr. and Mrs. Whalen were, at that time, not on friendly terms with their daughter and her husband and did not wish them to come into possession of the property. The evidence strongly suggests that the latter reason was the grantors' principal motive for the execution of the deed, and that it was, as suggested by the trial court in the questions propounded to appellant Myrtle Lanier, intended to be testamentary in its nature, rather than a present transfer of title.

Mrs. Lanier's testimony suggests that, not long after the execution of the deed, the grantors were of the opinion that the existing situation did not properly express their intentions, and that, consequently, appellants executed the defective lease which they evidently sent to Mr. Whalen. Appellants do not contend that the deed was executed in reliance upon any promises on their part to extend further financial or other aid to the grantors.

Respondent is, as the trial court stated in its opinion, illiterate, and the preponderance of the evidence at the trial indicates that respondent did not understand that she and her husband had conveyed title to the property to appellants, and that her first knowledge of the true situation was brought to her when, after her husband's death, she con-

templated selling the property and moving into smaller quarters. Respondent was then advised, as the result of the preliminary search of the title, that the property had been deeded to appellants.

Appellants called only two witnesses, Myrtle Lanier and a handwriting expert. The testimony of the latter concerned only the genuineness of respondent's signature to the deed. Mrs. Lanier testified definitely and positively that the deed in question constituted a gift based upon a past consideration, namely, the small amounts of money which appellants had given to the grantors during the year 1934 and the first portion of 1935. How many such gifts were made during the year 1934, does not appear. Mr. and Mrs. Whalen's desire that their daughter and son-in-law should not receive any advantage from the property was, of course, no consideration whatever moving to the grantors from appellants.

It is not contended that appellants made any promise to continue to extend financial assistance to the Whalens after the execution of the deed, although the evidence shows that they did, thereafter, during a period of four years or so, frequently give them small amounts of money. Mrs. Lanier testified that she knew that, after the execution of the deed, the grantors had no right to occupy the premises, they having nothing "except we wanted them to live there." She testified that there was no consideration moving to appellants for the execution of the purported lease, which appellants signed only because they wanted their aunt and uncle to feel more secure in their possession of the premises.

■ The burden rests upon a party to litigation who seeks to prove a gift in his favor, either *inter vivos* or *causa mortis.* In 38 C. J. S. 856, § 65b, appears the following text:

"One affirmatively asserting a gift inter vivos usually bears the burden of proving it.

"While there are numerous holdings and statements that the burden of proving a gift inter vivos is on the one asserting it, this including the burden of establishing all the facts and elements essential to the validity of the gift, the rule being said to be especially true where the alleged donee is in a position of trust and confidence, or where the gift is asserted after the death of the alleged donor, the general

rule that the burden of proof is on the one having the affirmative of an issue applies to actions with respect to gifts. Thus, where plaintiff's right to recover is founded on an alleged gift, the burden is on him to establish the gift. Likewise, where a gift is affirmatively set up in the answer by way of confession and avoidance or by other affirmative plea, the burden of establishing the gift is on the one asserting it."

See, also, 24 Am. Jur. 790, Gifts, § 115.

This court, in the early case of *Kennedy v. Currie,* 3 Wash. 442, 28 Pac. 1028, in an opinion written by Judge Dunbar, affirmed a decree of the superior court setting aside, at the suit of the grantor, a deed to real estate which constituted his only property. The consideration for the deed was a written agreement whereby the grantee agreed to support the grantor, who was then seventy-five years of age, during the remainder of his life. In his complaint, the plaintiff alleged that, at the time of the execution of the deed, and the contract given him in return by the defendant in the action, the plaintiff was weak in body and mind, and that he was overreached by the defendant. This court affirmed the decree of the trial court, calling attention to the fact that ". . . the most inequitable feature of this case is, that Kennedy was without any security for the enforcement of his contract."

While the facts in the case cited differ basically from those in the case at bar, the opinion is in point, and, as noted by the trial judge, who quoted from the opinion in his memorandum, in the case at bar, the Whalens had no protection whatever by way of a contract. Appellants contend that it was agreed between themselves and their grantors that the grantors should occupy the premises conveyed during their lifetime, which, it must be inferred, included the lifetime of the survivor. Mr. and Mrs. Whalen, however, had no security in their possession of the property. Had appellants conveyed or mortgaged the property, or had appellants suffered the rendition of a judgment against them, which would have become a lien on the property, or had one of the grantees died, leaving debts,

Mr. and Mrs. Whalen's possession of the land would certainly have been seriously jeopardized.

In the case of *Meyer v. Campion*, 120 Wash. 457, 207 Pac. 670, this court quoted with approval from *In re Sparks' Will*, 63 N. J. Eq. 242, 51 Atl. 118, the following:

" 'The controlling reason is, I think, because by a gift a man strips himself of that which he can still enjoy and of which he may have need during his life; while by his will he disposes of that which can be of no further use to him. As he is, under ordinary conditions, so much the less likely to do the first than the second, courts subject gifts to the sharper scrutiny.' "

In the case of *Roesch v. Gerst*, 18 Wn. (2d) 294, 138 P. (2d) 846, we said:

"We shall first discuss the gift theory. It is well settled that there must be a clear and unmistakable intention on the part of the donor to make a gift of his property, in order to constitute a valid, effective gift *inter vivos* or *causa mortis*. Thus it has been held that a delivery of property, unless made with such intent, does not amount to a gift either of personalty or of realty. The donor must intend to relinquish the right of dominion on the one hand, and to create it on the other, and the intention to make a gift must be a present intention; a mere intention to give it in the future will not suffice. 24 Am. Jur., p. 738, § 21."

In the case of *Tucker v. Brown,* 199 Wash. 320, 92 P. (2d) 221, this court, in determining whether or not the evidence was sufficient to show that a gift of personal property had been made, said:

"In order to constitute a gift of personal property, it is necessary (a) that there be an intention on the part of the donor to personally give; (b) a subject matter capable of passing by delivery; (c) an actual delivery at the time; (d) the delivery must divest the donor of present dominion and control over the property absolutely and irrevocably and confer upon the donee the dominion and control; and (e) a gift will not be presumed, but he who asserts title by this means must prove it by evidence which is 'clear, convincing, strong, and satisfactory.' [Citing cases.]"

In the case last cited, the alleged gift concerned personal property. In the case at bar, a deed was delivered to ap-

pellants. However, appellants repudiate the theory of a consideration and contend that the deed was a gift. Under these circumstances, the burden rests upon appellants to prove that the deed was, in fact, a present, absolute gift of the property described therein.

Mrs. Lanier testified that the suggestion that the real estate be deeded to appellants came from Mr. Whalen, who died prior to the commencement of this action, thereby placing a greater burden upon appellants to prove their contention that the deed constituted an absolute, present gift of the property. While the issues are somewhat confused because of respondent's contention that she never signed the deed, which she undoubtedly did, we are convinced, from the record, that she never intended to make a presently effective deed of the property, and it is highly probable that she never understood that the property had been conveyed to appellants until the deed was called to her attention after her husband's death, as stated above.

It is well-nigh impossible to believe that Mr. and Mrs. Whalen intended to absolutely divest themselves of title to the real estate, which constituted practically their entire property, in consideration of the financial assistance which appellants, prior to the execution of the deed, had kindly extended to them. It is most probable that Mr. and Mrs. Whalen were motivated by the pique which they then felt against their daughter and son-in-law, and that their intention was to make a testamentary disposition of their property. It does not appear that they had the benefit of legal advice at the time. It would, of course, have been a very simple matter to secure to appellants the return of the money appellants had advanced, or would advance, by a mortgage upon the property.

This is an action in equity. The trial court heard and saw the witnesses and stated its conclusions in a memorandum opinion which, evidently, was carefully prepared.

The decree appealed from is supported by the preponderance of the evidence and is, accordingly, affirmed.

MALLERY, C. J., STEINERT, ROBINSON, and JEFFERS, JJ., concur.