[No. 2362–3. Division Three. May 30, 1978.]

HAROLD ROLPH, *Respondent*, v. ODESSA M. McGOWAN,
ET AL, *Respondents*, DENNIS B. SWARTOUT,
ET AL, *Appellants*.

*Nancy E. Horgan* and *Randall & Danskin,* for appellants.

*C. E. Huppin, Huppin, Ewing, Anderson & Hergert, George Young,* and *Gary Diana,* for respondents.

GREEN, J.—Harold Rolph sued to foreclose his security interest in an equipment contract. The trial court allowed foreclosure and granted Mr. Rolph a deficiency judgment against one of the original obligors on the contract, Odessa McGowan, and against Max and Joy Lyons and Dennis and Patricia Swartout. The court further entered judgment on Mrs. McGowan's behalf against the Lyonses and the Swartouts, and on the Lyonses' behalf against the Swartouts. The Swartouts appeal.

Two issues are presented: (1) Was Mr. Rolph barred from claiming a deficiency by his failure to file a creditor's claim in the estate of Mickey McGowan, Odessa's deceased husband, who, with his wife, was an original obligor on the equipment contract? and (2) Was there clear, cogent, and convincing proof to support the trial court's reformation of the Lyons/Swartout agreement to show that the Swartouts had assumed the equipment contract?

In April 1974, Harold Rolph sold a restaurant business, including certain restaurant equipment, to Mickey and Odessa McGowan. The sale was by security agreement. Subsequently, McGowan entered into a partnership with Max Lyons to operate the restaurant. Upon dissolution of this partnership in January 1975, Mr. Lyons assumed its obligations, including the equipment contract.

In February 1975, Mr. Lyons and his wife, Joy, decided to sell the restaurant because he was in ill health. Mrs. Lyons testified that she talked to Mr. Swartout on the telephone regarding the prospective sale and stated to him that she and her husband wanted "out" of the business. Mr. Swartout was an experienced real estate broker and the owner of a closing company. He decided to purchase the restaurant and because of his experience offered to draft the documents for the sale, telling the Lyonses that an attorney would not be necessary. However, he testified that prior to the closing, he contacted his own attorney for guidance in drawing up the contract in order to avoid assuming certain obligations. As drafted, the contract provided that the Swartouts were to:

(1) Pay according to the terms thereof that certain promissory note dated January 2, 1975, in the amount of $10,000 wherein Mickey or Odessa M. McGowan are the payees and Max T. and Joy A. Lyons are the makers. . . .

. . .

(3) Take the property and equipment subject to, and only subject to, the following items:
A. Scarpelli–McGowan contract of $78,333.38.
B. Rolph equipment contract of approximately $36,800.
C. Delinquent property taxes for 1971, 1972, 1973, 1974.
D. Washington Water Power air conditioning contract of approximately $3,500.00.

The parties negotiated and closed the transaction within a 2–day period.

Swartout made five payments on the equipment contract and then dealt directly with Mr. Rolph to secure a modification of that agreement with respect to the payments. Soon thereafter, Swartout ceased making payments altogether, and Rolph instituted this action.

First, the Swartouts contend that Mr. Rolph's claim is barred because he failed to file a creditor's claim in the estate of Mickey McGowan within the time required by

law. They base their argument on *Graham v. Radford,* 71 Wn.2d 752, 431 P.2d 193 (1967). There, the plaintiff brought an action for personal injuries against a woman who, with her husband, owned and managed the apartment building where the accident causing the injuries occurred. The husband died subsequent to the accident and the plaintiff did not file a creditor's claim in his estate. In denying recovery against the wife because of the plaintiff's failure to file a creditor's claim, the court stated:

> It is the rule in this state that the creditor must exhaust the primary fund before he can resort to the secondary fund. In the case of *In re Schoenfeld's Estate* [56 Wn.2d 197, 351 P.2d 935 (1960)], *supra,* this court held that community debts of a deceased husband and surviving wife could not be charged against the separate property of the deceased before the community property was exhausted.

*Graham v. Radford, supra* at 756. Since the community property, all of which is subject to administration in the decedent's estate, would be primarily liable, and inasmuch as it was not liable, no claim having been filed, the court held that the secondary liability of the surviving spouse did not arise. We have considered this decision, but do not find it controlling.

■ Rolph's security agreement with the McGowans contained the following language in the preamble:

> This agreement executed . . . by and between Rolph Restaurant Corporation, a Washington corporation, hereinafter known as "Seller", and Mickey J. McGowan and Odessa M. McGowan, husband and wife, hereinafter known as "Buyers" . . .

It was signed by the McGowans as follows:

/s/ Mickey J. McGowan
/s/ Odessa M. McGowan, Purchasers.

The preamble to the security agreement refers to the fact that the buyers are husband and wife, but there is no language in the agreement stating that the buyers are purchasing the property "as husband and wife." Therefore, Odessa McGowan's signature on the security agreement

created a separate obligation in her, as well as a presumptively community obligation. Since separate debts are primarily payable from separate property, Mrs. McGowan's separate property was primarily liable and the failure to file a creditor's claim in Mr. McGowan's estate would not bar recovery by Mr. Rolph. *See Lind v. Frick*, 15 Wn. App. 614, 550 P.2d 709 (1976).

Second, the Swartouts contend that the trial court erred in permitting reformation of the Lyons/Swartout agreement to show assumption of the equipment contract by the Swartouts. Specifically, they assign error to the trial court's finding that it was the intent of all the parties that the Swartouts would assume the Rolph obligation.

The contract provided that the Swartouts would take the property and equipment "subject to" the Rolph contract. Generally, the term "subject to" means that the grantee is taking without personal liability to either his own vendor or to the holder of the security interest. *See* Osborne, *Mortgages* § 252, at 507 (1970). The Swartouts assert that this contractual provision is binding upon the parties.

The court may reform a contract so that it expresses the real intention of the parties if it finds that the parties were mutually mistaken in their understanding of a material term or that one of the parties was mistaken and the other party acted fraudulently or inequitably. *J.J. Welcome & Sons Constr. Co. v. State*, 6 Wn. App. 985, 988, 497 P.2d 953 (1972). The evidence of the mistake of fact must be clear, cogent, and convincing. *Kessinger v. Anderson*, 31 Wn.2d 157, 168, 196 P.2d 289 (1948); *Kincaid v. Baker*, 66 Wn.2d 550, 403 P.2d 888 (1965).

Here, Mr. Swartout's uncorroborated testimony was that he knew that the term "subject to" meant that he was not assuming the equipment contract. He stated that he had solicited the advice of his attorney in drawing the documents because he wanted to avoid personal liability even though the Lyonses had informed him they wanted "out" of the business. On the other hand, the Lyonses testified that

the term "subject to" meant nothing to them and that it was their intent and understanding that the Swartouts would assume personal liability on the equipment contract. They were not aware that Swartout had contacted his attorney. In fact, they testified that Mr. Swartout told them that an attorney would not be necessary because he was experienced in handling this type of transaction.

The clear, cogent, and convincing standard does not require that the plaintiff's proof be uncontradicted. *Noord v. Downs,* 51 Wn.2d 611, 615, 320 P.2d 632 (1958). However, the standard is not met where the only evidence consists of uncorroborated conflicting testimony by the parties. Here, there is corroborative evidence.

Both parties agreed that the Lyonses told Mr. Swartout that they wanted "out" of the business. Further, the court in its oral opinion, noted that after the sale Mr. Swartout contacted Mr. Rolph directly seeking permission to modify the amount of the payments on the equipment contract. Neither Mrs. McGowan nor the Lyonses were aware of this request. Mr. Swartout contends that the request is not evidence of his intent to assume and cites *Buchanan v. Schubach,* 106 Wash. 399, 180 P. 407 (1919), and *Perkins v. Brown,* 179 Wash. 597, 38 P.2d 253, 101 A.L.R. 275 (1934), in support of his contention. However, in *Buchanan,* the seller's agent knew that the buyer had applied for extension of the time for payment, and in *Perkins* the buyer's assignee, rather than the buyer himself, made the application. In those circumstances, the court held that the applications did not conclusively show assumption of the debt. Here, Mr. Swartout sought modification without informing the Lyonses of it. In these circumstances, Mr. Swartout's action is evidence of his intent to assume the obligation, although it is not conclusive proof of that intent.

Coupled with this circumstance is the fact that Mr. Swartout removed to another location a steam table and a

cash register, which were covered by the security agreement. Again, such evidence is not conclusive proof of Mr. Swartout's intent, but the trial court properly considered it in reaching its conclusion. The trial court also took note of the other documents prepared by Mr. Swartout in connection with the sale, including the deed and purchaser's assignment of real estate contract which indicates that the Swartouts will assume the Scarpelli/McGowan real estate contract. This same real estate contract is mentioned in the Lyons/Swartout agreement in the paragraph which lists the obligations which Mr. Swartout is taking "subject to." The language of the deed is evidence that Mr. Swartout did not intend the term "subject to" to relieve him of personal liability. We must determine whether the foregoing evidence, viewed as a whole, constitutes clear, cogent, and convincing evidence of mutual mistake.

■ Our court has defined clear, cogent, and convincing evidence as evidence which is highly probable. *In re Sego,* 82 Wn.2d 736, 739, 513 P.2d 831 (1973). On appeal, the question is whether there is substantial evidence to support the trial court's finding in light of the highly probable test. *In re Sego, supra* at 739. In making this determination, an appellate court does not weigh the evidence or the credibility of witnesses. *In re Sego, supra* at 739–49.

Here, the trial court chose not to believe Mr. Swartout's claim that the parties did not mutually intend that he assume the liabilities of the business. Considering the record in a light most favorable to the prevailing parties, we find substantial evidence to support the trial court's finding based on the highly probable test.

Accordingly, we affirm the trial court's reformation of the contract. We remand this action to the trial court for a determination of the amount of attorney's fees due Mr. Rolph on appeal as provided for in his security agreement.

*Corinthian Corp. v. White & Bollard, Inc.,* 74 Wn.2d 50, 442 P.2d 950 (1968).

MUNSON, C.J., and ROE, J., concur.

Reconsideration denied July 19, 1978.

Review denied by Supreme Court December 1, 1978.