[No. 8604–9–I.    Division One.    December 14, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. HARRISON R. WOOLWORTH, *Appellant.*

*Edwards & Barbieri* and *Charles Wiggins,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Robert Lasnik, Deputy,* for respondent.

CALLOW, J.—Harrison R. Woolworth appeals from a jury verdict finding him guilty of taking indecent liberties with his stepdaughter, a girl under age 14. *See* RCW 9A.44-.100(1)(b). He argues that his conviction should be reversed because (1) the jury received an erroneous instruction defining "knowledge" and (2) evidence of prior sexual contact with the victim was erroneously admitted.

I

THE "KNOWLEDGE" INSTRUCTION

The crime of indecent liberties is defined in RCW 9A.44-.100.

> (1) A person is guilty of indecent liberties when he *knowingly* causes another person who is not his spouse to have *sexual contact* with him or another:
>
> . . .
>
> (b) When the other person is less than fourteen years of age; . . .
>
> . . .
>
> (2) For purposes of this section, "sexual contact" means any touching of the sexual or other intimate parts of a person done for the *purpose* of gratifying sexual desire of either party.

(Italics ours.) "Knowledge" in the jury instructions was defined as follows:

> A person knows or acts knowingly or with knowledge when:
>
> (1) he is aware of a fact, facts or circumstances or result described by law as being a crime; or
>
> (2) *he has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by law as being a crime.*
>
> Acting knowingly or with knowledge is established if a person acted intentionally.

(Italics ours.) The instruction was patterned after the statutory definition of knowledge in RCW 9A.08.010(1)(b).

*State v. Shipp*, 93 Wn.2d 510, 512, 610 P.2d 1322 (1980), held that the statutory definition of knowledge

> merely allows the inference that a defendant has knowledge in situations where a reasonable person would have

knowledge, rather than creating a mandatory presumption that the defendant has such knowledge.

Two other interpretations of the statute were held unconstitutional.

First, the juror might believe that if he concludes that the defendant had received information which would impart knowledge to a reasonable person then he must find, as a mandatory presumption, that the defendant had knowledge. This interpretation of the instruction would not allow the juror to consider the subjective intelligence or mental condition of the defendant.

. . .

[This] interpretation, which creates a mandatory presumption, is clearly unconstitutional.

*Shipp,* at 514–15.

Second, the juror might believe that, for the purposes of the law, the familiar word "knowledge" is redefined to be different from its ordinary meaning. That is, if an ordinary person in the defendant's situation would have known a fact, then the defendant is deemed to have had "knowledge" under the law, even if he was so unperceptive or inattentive that he did not have knowledge in the ordinary sense.

. . .

The second interpretation redefines knowledge with an objective standard which is the equivalent of negligent ignorance. If the defendant is ignorant in a situation where the ordinary man would have knowledge, then the defendant would be deemed to have "knowledge" under the law. Such a redefinition is inconsistent with the statutory scheme which creates a hierarchy of mental states for crimes of increasing culpability. . . .

This interpretation of the statute, as redefining knowledge, is also unconstitutional. Statutes which define crimes must be strictly construed according to the plain meaning of their words to assure that citizens have adequate notice of the terms of the law, as required by due process.

*Shipp,* at 514–16.

█ Instructing the jury in the language of the statute does not, however, require reversal in every case in which the knowledge instruction is given. In *State v. Russell,* 27

Wn. App. 309, 617 P.2d 467 (1980), the defendant had been convicted of forgery, which requires proof of an intentional act. By convicting Russell, the jury necessarily found that she had acted intentionally. By law, she also had acted knowingly. RCW 9A.08.010(2) provides in part:

> When acting knowingly suffices to establish an element, such element also is established if a person acts intentionally.

Thus the court found that giving the knowledge instruction was harmless error. *Russell,* at 313; *accord, Shipp,* at 518.

The court, however, reversed Russell's conviction for possessing stolen property, which requires proof that the defendant *knew* the property had been stolen.

> [T]he State was required to prove beyond a reasonable doubt that Russell acted with *knowledge* that the credit card had been stolen. There was evidence that Russell may have been ignorant of the fact the card was stolen. *It is possible the jury may have considered this evidence yet convicted her because, interpreting the instruction impermissibly, it believed that an ordinary person would have known the credit cards were stolen.* Thus the knowledge instruction was erroneous in the context of the possession of stolen property charge. *State v. Shipp, supra.* The conviction for possessing stolen property must therefore be reversed.

(Italics ours.) *Russell,* at 313; *accord, Shipp,* at 517.

*State v. Simmons,* 28 Wn. App. 243, 622 P.2d 866 (1980), found that giving the knowledge instruction was harmless error in the defendant's trial for first degree arson, which requires proof that the defendant acted knowingly. Unlike two of the defendants in *Shipp* and unlike Russell's conviction for possessing stolen property, "it was *not* possible that the jury could have found that Simmons was merely reckless, negligent, or ignorant", but convicted him because an ordinary person would have known that he was committing arson. *Simmons,* at 245.

> Simmons denied that he started the fire, his defense being alibi. The evidence was clear, however, that if he did start the fire, he did so knowingly or intentionally.

There was evidence that Simmons had been fighting on the day of the fire with one Bivens. Shortly before the fire, Bivens saw Simmons enter the apartment building. A young boy testified he saw Simmons about 15 minutes or half an hour before the fire with a can of paint thinner in his possession, and Simmons said at that time that he was going to burn up the building with the paint thinner. Testimony by a fire inspector indicated that the fire was deliberately set, began outside Bivens' apartment, and followed a trail of flammable liquid down the hall.

By returning a verdict of guilty, the jury rejected Simmons' alibi defense. It therefore found that he did start the fire. There being no evidence upon which it could have found he acted recklessly, negligently, or out of naive ignorance, any error in giving the knowledge instruction was harmless.

*Simmons,* at 245–46.

■ In the instant case, the jury was instructed that to find Woolworth guilty of indecent liberties, it must find that he "*knowingly* caused [his stepdaughter] to have *sexual contact*" with him. (Italics ours.) "Sexual contact" was defined in the language of RCW 9A.44.100(2) as "any touching of the sexual or other intimate parts of a person done for the *purpose* of gratifying sexual desire of either party." (Italics ours.)

Woolworth admitted having physical contact with his stepdaughter but denied that it was knowingly sexual. By finding Woolworth guilty of committing indecent liberties, the jury necessarily found that any sexual contact was done *purposely, i.e.,* with the purpose of gratifying sexual desire. *See* RCW 9A.44.100(2) The jury thus rejected his contention that the contact was not knowingly sexual. The jury could not have found Woolworth reckless, negligent, or ignorant in causing the sexual contact, yet convicted him because an ordinary person would have known that the contact was sexual. Such a conclusion would be inconsistent with the finding that Woolworth acted purposely.

"Purpose" and "intent" are synonymous for criminal culpability under RCW 9A.08.010(1)(a): "A person acts with *intent* or intentionally when he acts with the objective or

*purpose* to accomplish a result which constitutes a crime."
(Italics ours.) By proving beyond a reasonable doubt that
Woolworth acted purposely or intentionally, by law, he also
acted knowingly. RCW 9A.08.010(2). Any error in giving
the knowledge instruction was therefore harmless.

## II
### EVIDENCE OF PRIOR SEXUAL CONTACT

Woolworth argues that evidence of his prior sexual con-
tact with his stepdaughter should not have been admitted
because it was unduly prejudicial. The evidence was admit-
ted to prove Woolworth's motive and the absence of mis-
take or accident. The prior sexual contact included oral sex,
masturbation, and "digital" intercourse.

ER 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admis-
> sible to prove the character of a person in order to show
> that he acted in conformity therewith. It may, however,
> be admissible for other purposes, such as proof of motive,
> opportunity, intent, preparation, plan, knowledge, iden-
> tity, or absence of mistake or accident.

Evidence relevant to prove the elements listed in rule
404(b) nevertheless may be excluded by the application of
rule 403. "Although relevant, evidence may be excluded if
its probative value is *substantially* outweighed by the dan-
ger of unfair prejudice . . ." (Italics ours.)

Woolworth does not dispute the relevance of the evidence
admitted but argues that it was unduly prejudicial because
the acts had occurred at least 1 year before and were more
overtly sexual than the acts charged in the information.
The statute of limitations for those acts also had run.

 The admission and exclusion of relevant evidence is
within the sound discretion of the trial court; the court's
decision will not be reversed absent manifest abuse of that
discretion. "Such abuse occurs only if no reasonable person
would take the view adopted by the trial court." *State v.
Huelett,* 92 Wn.2d 967, 969, 603 P.2d 1258 (1979).

No abuse of discretion occurred in the instant case. A
reasonable person easily could conclude that the prejudicial

effect of admitting evidence of the prior sexual contact did not substantially outweigh its probative value. Moreover, the learned trial judge, aware that the jury could misunderstand the purpose of the testimony, wisely cautioned them before the evidence was received. We approve of his remarks.

THE COURT: Ladies and gentlemen of the jury: Before the—testimony starts, I want to indicate to you that testimony will be presented by the plaintiff, which is the State of Washington, through [the stepdaughter] as to sexual contacts between her and the defendant prior to the acts for which he has been charged.

The acts that are charged in this case allegedly occurred between November 1, 1977 and November 30, 1978.

Such evidence is not offered for, nor may it be considered by you to prove that the defendant is a person of bad character or that he has a disposition to commit crimes. Such evidence may be considered by you only for the limited purpose of determining if it tends to show one, the motive of the person who committed the crime, if any, for which the defendant is accused. Two, the absense [*sic*] of mistake or accident, by the person who committed the crime, if any. For the limited purpose for which you may consider such evidence, you must weigh it in the same manner as you do all other evidence in the case. You are not permitted to consider such evidence for any other purposes.

A similar directive was included in the jury instructions.

The judgment is affirmed.

SWANSON and CORBETT, JJ., concur.