[No. 4881-1-III. Division Three. December 6, 1983.]

FLORENCE M. KOPPANG, *Respondent,* v. LEON HUDON, ET AL, *Appellants.*

---

*Terry A. Brooks, Philip A. Lamb,* and *Brooks & Larson,* for appellants.

*John Gavin, West H. Campbell,* and *Gavin, Robinson, Kendrick, Redman & Mays, Inc., P.S.,* for respondent.

McINTURFF, J.—This case involves three transfers of money from Florence Koppang to Leon and Delores Hudon. This money came from a credit union, a savings and loan institution, and proceeds from the sale of a mobile home. Mrs. Koppang claims Mrs. Hudon exerted undue

influence. Mrs. Hudon claims the transfers were gifts. The jury decided the transfer of the money from the savings and loan accounts was a gift and that Mrs. Hudon exerted undue influence in obtaining the other two transfers. We affirm.

Mrs. Hudon is Mrs. Koppang's niece. She knew Florence and Clarence Koppang since she was a young girl and lived with them for 1 year while in high school. Following her marriage to Leon, the Hudons remained on friendly terms with the Koppangs.

Clarence Koppang died on July 21, 1978. Mrs. Koppang became depressed and very confused. Mrs. Hudon would stop by Mrs. Koppang's home several times each week to see how she was doing. She began writing out Mrs. Koppang's checks to pay her bills.

On August 7, 1978, the two women went to an attorney's office and Mrs. Koppang granted a power of attorney to Mrs. Hudon. That same day they went to the Yakima City & County Employees Credit Union (credit union) and the Home Federal Savings and Loan Association (savings and loan) and added Mrs. Hudon's name to Mrs. Koppang's accounts.

On September 7, 1978, they returned to the credit union and transferred the moneys into a new account bearing only Mrs. Hudon's name. There was $71,410.15 in the credit union account. They next went to the savings and loan and withdrew $32,399.48 from the accounts and deposited the money in a new account bearing only Mrs. Hudon's name. A zealous employee prepared a memo, signed by Mrs. Koppang, which stated in part: "This is to certify that I am freely transferring the above–mentioned accounts to Dolores [sic] A. Hudon." The moneys from the credit union and the savings and loan were later withdrawn by the Hudons.

In February 1979, Mrs. Koppang received $19,000 from the sale of her mobile home. The proceeds from this sale were transferred to Mrs. Hudon.

In the fall of 1979, the two women had disagreements

which caused Mrs. Koppang to revoke the power of attorney she had previously granted to Mrs. Hudon. In January 1980, Mrs. Koppang commenced this action alleging Mrs. Hudon had exerted undue influence and had induced her to transfer the moneys from the credit union and the savings and loan, along with the mobile home proceeds, to Mrs. Hudon. Mrs. Hudon denied that she exerted undue influence and asserted, as an affirmative defense, that the transfers were gifts. The case was tried to a jury which determined the moneys from the savings and loan were a gift but that the credit union moneys and the mobile home proceeds had been obtained through the exercise of undue influence. A $90,410.15 verdict was entered in favor of Mrs. Koppang.

First, Mrs. Hudon contends the trial court did not properly instruct the jury on undue influence. The jury was instructed:

A gift obtained by undue influence is not valid.

Undue influence is something more than mere influence, and to invalidate a gift there must have been undue influence at the time a gift was made.

*Undue influence consists of conduct interfering with the free will of the donor (person making the gift), and preventing the exercise of the donor's judgment and choice.*

In determining whether there has been undue influence that would invalidate a gift, you may consider the relationship between the donor and donee; the donor's age; the donor's mental and physical health and condition; the amount of the money gifted; the financial condition in which the gift or gifts leave the donor; the donor's knowledge and understanding of the terms of the gift; the presence or absence of independent advice to the donor prior to the gift; the donor's prior intentions and concerns as to the disposition of the donor's property; the opportunity for the donee to exert undue influence; and the naturalness or unnaturalness of the gift.

(Italics ours.) Instruction 9.

The trial court refused to give Mrs. Hudon's instruction which was essentially the same instruction with the follow-

ing change:

> Undue influence consists of *coercion* destroying the free will of the donor (the person making the gift), and preventing the exercise of the donor's judgment and choice.

(Italics ours.)

■ Mrs. Koppang claims Mrs. Hudon exerted undue influence. The party asserting undue influence has the burden of proving it by clear, cogent and convincing evidence. *In re Estate of Soderstran*, 35 Wn.2d 448, 452, 213 P.2d 949 (1950). However, if a confidential relationship exists between the parties, the burden shifts to the defendant. *McCutcheon v. Brownfield*, 2 Wn. App. 348, 356, 467 P.2d 868 (1970). Mrs. Hudon admits a confidential relationship existed. Therefore, to prevail, Mrs. Hudon needed to establish by clear, cogent and convincing evidence the transfers were gifts, *McCutcheon*, at 357, and that she did not exert undue influence in obtaining them.

The issue presented is whether Mrs. Hudon had the burden to prove the lack of coercion or the lack of interference with the free will of Mrs. Koppang.

In analyzing the cases discussing undue influence, we are mindful of *In re Estate of Martinson*, 29 Wn.2d 912, 914, 190 P.2d 96 (1948):

> Legal definitions of the term "undue influence" cannot be given that will serve as a safe and reliable test for every case. Each case depends to a very large extent upon the facts presented to the court.

In discussing undue influence, the older cases speak of coercion. *In re Estate of Soderstran, supra* at 462; *In re Estate of Martinson, supra* at 914; *In re Estate of Bottger*, 14 Wn.2d 676, 701, 129 P.2d 518 (1942). The later cases do not. *Doty v. Anderson*, 17 Wn. App. 464, 563 P.2d 1307 (1977); *McCutcheon v. Brownfield, supra.*

■ Whether the undue influence instruction must include the word "coercion" must be determined by the facts of each case. In the present case, there was an inter vivos transfer between parties in an admitted confidential

relationship. In reviewing jury instructions, the test is whether the instructions, as given, enabled a party to argue its theory of the case. *Kjellman v. Richards,* 82 Wn.2d 766, 514 P.2d 134 (1973); *Hammond v. Braden,* 16 Wn. App. 773, 559 P.2d 1357 (1977). Under these facts, the trial court's refusal to include the word "coercion" in its undue influence instruction was not error. Mrs. Hudon was able to argue her theory of the case from the instructions given.

Next, Mrs. Hudon contends the trial court erred by not allowing her to present evidence relating to the payment of a gift tax. The trial court refused to admit a gift tax return which reflected a $104,832.99 cash gift made on September 7, 1978, by Mrs. Koppang to the Hudons. The return was signed by Mrs. Hudon under her power of attorney on behalf of Mrs. Koppang. The gift tax amounted to $15,030.55 and was paid by the Hudons.

The trial court excluded all evidence related to the payment of the gift tax. It ruled such evidence was irrelevant because it had no bearing on Mrs. Koppang's intent and that even if it was relevant, it was properly excluded because it was highly prejudicial and confusing to the jury.

 The Hudons' contention that the court erred in excluding all evidence of payment by the Hudons of a gift tax is without merit. The determination of whether evidence is relevant is discretionary with the trial court, *State v. Turner,* 29 Wn. App. 282, 289, 627 P.2d 1324 (1981); *State v. Bonner,* 21 Wn. App. 783, 793, 587 P.2d 580 (1978). The determination whether to admit or exclude relevant evidence is also discretionary. The trial court's decision will not be reversed absent manifest abuse, *i.e.,* no reasonable person would take the view adopted by the trial court. *State v. Woolworth,* 30 Wn. App. 901, 906, 639 P.2d 216 (1981).

Here, Mrs. Hudon insists the filing of the gift tax return is probative on the gift issue. However, the gift tax return was not signed by Mrs. Koppang but rather by Mrs. Hudon, exercising her power of attorney. Mrs. Hudon contends Mrs. Koppang participated in the preparation of,

knew of, failed to object to, ratified and acquiesced in the gift tax by signing a check to an accountant for professional services rendered in preparing the tax returns. She also contends evidence Mrs. Koppang and Mrs. Hudon contacted an attorney regarding a gift was probative. However, the record shows that the attorney contacted was the Hudons' attorney, having prepared reciprocal wills for them; Mrs. Hudon made the arrangements for Mrs. Koppang to talk with the attorney; and Mrs. Hudon paid the attorney's fees for the meeting. In light of these facts, we cannot conclude "no reasonable person would take the view adopted by the trial court." Therefore, the trial court did not abuse its discretion in excluding the testimony and evidence.

In her cross appeal, Mrs. Koppang contends the trial court erred in not directing a verdict in favor of herself concerning the $32,399.49 transfer from the savings and loan. She contends Mrs. Hudon failed to establish by clear, cogent and convincing evidence that this transfer was a gift. A motion for a directed verdict can be granted only where it can be held as a matter of law that there is no evidence or reasonable inference therefrom to sustain a jury verdict for the nonmoving party. *Browning v. Ward,* 70 Wn.2d 45, 48, 422 P.2d 12 (1966).

Regarding the savings and loan transfer, the jury heard considerable testimony which supports the jury's finding of a gift. In particular, the savings and loan employee who handled the transfer testified that she questioned Mrs. Koppang on at least three occasions as to whether she wanted the transfer made. Despite Mrs. Koppang's repeated assurances that she knew what she was doing, the employee had Mrs. Koppang sign a statement that she was "freely transferring the above–mentioned accounts" to Mrs. Hudon. Thus, we conclude there is sufficient evidence to support the jury's determination that the bank transfer was a gift made without undue influence.

The judgment of the Superior Court is affirmed.

MUNSON, C.J., concurs.

GREEN, J. (dissenting)—A thorough reading of the record convinces me that the trial court erred in refusing to grant a directed verdict in favor of Mrs. Koppang. Therefore, I respectfully dissent.

In summary, Mrs. Koppang had questionable mental capacity. Mrs. Hudon was given a power of attorney. As a fiduciary, she had a duty to preserve Mrs. Koppang's assets; instead, within months all or substantially all of Mrs. Koppang's assets were in the possession of Mrs. Hudon and her husband available for their personal use. Mrs. Hudon claims the transfer to herself of almost $125,000 was a gift. In my view, the evidence is not of sufficient quantum to establish a gift by the higher clear, cogent and convincing standard. Consequently, the court should have directed a verdict for Mrs. Koppang.

Because Mrs. Hudon was a fiduciary, the Hudons had the burden of proving by clear, cogent and convincing evidence the transfer was a gift. *Whalen v. Lanier,* 29 Wn.2d 299, 310, 186 P.2d 919 (1947); *In re Estate of Oney,* 31 Wn. App. 325, 329, 641 P.2d 725 (1982); *Doty v. Anderson,* 17 Wn. App. 464, 471, 563 P.2d 1307 (1977). Clear, cogent and convincing evidence is something more than a mere preponderance, *Bland v. Mentor,* 63 Wn.2d 150, 154, 385 P.2d 727 (1963); *Holmes v. Raffo,* 60 Wn.2d 421, 426, 374 P.2d 536 (1962); 5 K. Tegland, Wash. Prac., *Evidence* § 62, at 112–13 (2d ed. 1982), but something less than proof beyond a reasonable doubt. *Beckett v. Department of Social & Health Servs.,* 87 Wn.2d 184, 186–87, 550 P.2d 529 (1976). The "clear, cogent and convincing" standard requires the ultimate facts and issues be shown by evidence which is highly probable. *In re Sego,* 82 Wn.2d 736, 739, 513 P.2d 831 (1973), *rev'g,* 7 Wn. App. 457, 499 P.2d 881 (1972); *Richards v. Pacific Nat'l Bank,* 10 Wn. App. 542, 519 P.2d 272 (1974); *Rolph v. McGowan,* 20 Wn. App. 251, 579 P.2d 1011 (1978). Therefore, this court's function in reviewing the trial court's refusal to direct a verdict is not simply to determine whether there is substantial evidence to support that decision, but whether the evidence is of such quantum

as to meet the higher "clear, cogent and convincing" standard and thus support a finding of gift. *In re Sego, supra* at 739; *Silver Surprize, Inc. v. Sunshine Mining Co.*, 15 Wn. App. 1, 23, 547 P.2d 1240 (1976).

The evidence shows Mrs. Koppang had an eighth grade education. During her marriage she was completely dependent upon her husband to manage their money and business affairs. Mr. Koppang died July 21, 1978. On August 7, just 17 days later, a power of attorney was prepared by Mrs. Koppang's attorney and executed by her designating Mrs. Hudon as her attorney in fact. On the same day, the two women went to the Yakima City & County Employees Credit Union and the Home Federal Savings and Loan Association where the Koppangs had their accounts. At that time Mrs. Hudon's name was put on the accounts with Mrs. Koppang. A month later, on September 7, Mrs. Hudon took Mrs. Koppang to Mrs. Hudon's attorney and another power of attorney was executed. That same day the funds in the joint accounts at the credit union and Home Federal were withdrawn and placed in new accounts in Mrs. Hudon's name only. On September 8 Mr. Hudon's name was added to the Home Federal account. The credit union account was closed on November 1 and a check for $72,795.66 was issued to Mrs. Hudon. On the same day, the Home Federal account was closed by the issuance of a check to Mr. Hudon for $32,411.10.

On November 9 another power of attorney was executed designating Mrs. Hudon as first attorney in fact and her husband, Leon D. Hudon, as second attorney in fact. During February 1979 Mrs. Koppang sold her mobile home. The proceeds, $19,000, were delivered to Mrs. Hudon to place with the other monies. Thus, in less than 7 months, substantially all of the Koppangs' savings and assets were in the sole possession and control of the fiduciary Mrs. Hudon and her husband for their personal use.

To compound this situation, Mrs. Koppang had serious mental problems. She had been receiving psychiatric treatment for the past 10 to 15 years and at one point had

undergone electric shock treatments. She was diagnosed as having organic brain disorder and dementia, which causes loss of memory and poor judgment. She also had Parkinson's Disease. A psychiatrist testified her organic brain syndrome affected her judgment to such an extent she had difficulty carrying out sequential activities and that while she may have appeared to understand what was said to her, she would have no memory of it.[1] This testimony is not contradicted by any other medical testimony.

In essence, there is evidence from the interested parties to support both positions on the question of gift. I fail to find any *disinterested corroborative evidence* that Mrs. Koppang intended to make an inter vivos gift to the Hudons. To the contrary, there is evidence corroborative of Mrs. Koppang's claim of no gift. Where evidence is equally balanced, or as here somewhat balanced in favor of no gift, proof by the clear, cogent and convincing standard has not been met.

Mrs. Bruns, an employee of Home Federal, who handled the transfer of Mrs. Koppang's savings account to Mrs. Hudon, questioned Mrs. Koppang about the advisability of transferring the funds to Mrs. Hudon. Mrs. Bruns testified that on three different occasions Mrs. Koppang responded: "If she couldn't trust her niece, who could she trust." Mrs. Bruns stated: "Well, it was—like her niece would take care of her the rest of her life, you know, that type of thing. Well, I still was reluctant to do such a thing because I felt that it was too permanent." According to Mrs. Bruns, neither party stated Mrs. Koppang was making a gift to Mrs. Hudon. As a result, obviously to protect the bank, Mrs. Bruns prepared and Mrs. Koppang signed a statement that the account was being freely transferred to Mrs. Hudon.

---

[1]For example, the psychiatrist testified Mrs. Koppang "was so unsure of her ability to think that she was unable to actually buy groceries. She couldn't make a decision whether she wanted to get a can of tomatoes or a can of squash. . . . She was having trouble preparing meals. . . . She couldn't get from the raw potato to the mashed potato. She would forget the steps in between, and forget what she had done prior to that time."

This written statement does not indicate the transfer was a gift; rather, the circumstances are more consistent with an intent to create a trust to be used for Mrs. Koppang's future needs.

Since the transfers occurred on the same day, it is appropriate to consider what occurred at the credit union when the Hudons closed that account. The teller informed the Hudons she knew they were withdrawing Mrs. Koppang's money. The Hudons in response stated they were going to invest the money at a higher rate of interest "for her." That statement is not consistent with a claim of gift. It is supportive of Mrs. Koppang's claim that the Home Federal transfer was for her benefit.

Additionally, it is important to note that one of the requirements for a completed gift is "donative intent". *Oman v. Yates,* 70 Wn.2d 181, 185, 422 P.2d 489 (1967); *In re Estate of Oney, supra* at 329. Where the donor is mentally incapacitated, donative intent to make a gift is lacking. *See In re Estate of Dawson,* 127 Wash. 205, 220 P. 764 (1923). Here two psychiatrists testified to the mental condition and judgmental deficiencies of Mrs. Koppang. The only controverting evidence was by Mrs. Hudon. Even though she was the one who arranged Mrs. Koppang's appointments with the psychiatrists, she testified she was unaware of Mrs. Koppang's mental condition and stated, "she can be just as bright as anybody. She's not a dumb person, not by a longshot [*sic*]. She's very intelligent." The evidence casts considerable doubt upon Mrs. Koppang's capacity to understand the nature of these transactions and renders the transaction even more ambiguous.

For the foregoing reasons, I do not find evidence of sufficient quantum to establish a gift by the higher clear, cogent and convincing standard. At most, the evidence is equivocal. Equivocal evidence is not clear, cogent and convincing evidence. Thus, a directed verdict should have been granted and I would enter judgment for Mrs. Koppang.

The question presented in this case is a troublesome one and, with the numbers in the aging population increasing,

will recur in the future. It is obvious both the donor and the donee occupying a fiduciary relationship need more protection than is afforded through litigation such as occurred here. It is an area for legislative consideration and action. Perhaps, transfers of this kind should be approved by a court. It might be appropriate to require that where all or substantially all of a person's property is transferred to one in the position of fiduciary, the transfer should be voided unless approved by a court. In any event, resolution of the issue of gift in this area under existing legal principles affords little protection to either party and is ripe for legislative action.

I would reverse and enter judgment for Mrs. Koppang.

Reconsideration denied January 6, 1984.